# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## CASE NO. 1:18-cv-1022

| | | |
|---|---|---|
| MONICA POUNCEY, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANTS'** |
| GUILFORD COUNTY, MARTY | ) | **BRIEF IN SUPPORT OF** |
| LAWING, In His Official and Individual | ) | **MOTION TO DISMISS** |
| Capacities, HEMANT DESAI, In His | ) | |
| Official and Individual Capacities, and | ) | |
| JEFFREY SOLOMON, In His Official | ) | |
| and Individual Capacities, | ) | |
|     Defendants. | ) | |

Pursuant to Fed. R. Civ. P. 8 and 12(b)(6) and L.R. 7.2, Defendants, Guilford County, a body politic and corporate of the State of North Carolina, ("County"); Marty Lawing, individually and in his official capacity as the Guilford County Manager, ("Mr. Lawing"); Hemant Desai ("Mr. Desai"), individually and in his official capacity as Information Services (hereinafter, "IS") Director; and Jeffrey Solomon ("Mr. Solomon"), individually and in his official capacity as IS Enterprise Technology Manager; by and through their counsel-of-record, hereby submit this brief in support of Motion to Dismiss Plaintiff's Complaint.

## STATEMENT OF THE CASE

On December 17, 2018, Plaintiff Monica Pouncey ("Plaintiff") instituted this action. Defendants were served with the Complaint, respectively, on December 27, 2018, December 28, 2018, and December 22, 2018. With consent of counsel for Plaintiff, Defendants used the last date of service of December 28, 2018 as the official service date

in filing Defendant's Motion for Extension of Time on January 9, 2019. On January 10, 2019, this Court entered an Order extending Defendants' time to respond by February 19, 2019. Plaintiff's causes of action allege the following pursuant to both Title VII of The Civil Rights Act of 1964, codified as 42 U.S.C. § 2000e, *et seq*, ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"): (1) Failure to Promote on the basis of race discrimination and retaliation; and (2) Termination on the basis of race discrimination and retaliation.

Pursuant to <u>Stewart v. Johnson</u>, 125 F. Supp. 3d 554, 557 (M.D.N.C. 2015), County includes exhibits to the Brief which are central to Plaintiff's claims and for which the Court may take judicial notice without converting Defendants' Motion to Dismiss to one for summary judgment. <u>Stewart</u> at 557 (holding that the court may do so even when Plaintiff has failed to introduce a pertinent document as part of her complaint).

## STATEMENT OF MATERIAL FACTS

Plaintiff is an African American female previously employed with the County as a Software Engineer from February 11, 2008 until 2011. She was promoted to Email Administrator in 2011. (Compl. ¶¶ 12, 14). On June 1, 2012, Stephen Boyd (Caucasian male), the IS Department Division Director over Client Services (now Enterprise Technology ("ET") and as Plaintiff's supervisor, separated from employment. Mr. Desai (Asian male) began supervising the ET Team. Mr. Solomon (Caucasian male) was hired June 30, 2014, as ET Team Supervisor. (Compl. ¶ 15). The ET Team was as follows: (1) <u>2015</u>: Jeffrey Dietz, R. Michael Lockey, Monica Pouncey, Glen Robertson, Jessica

2

Starke, Bradley Steele, Wayne Streeter, Jan Vanthillo, Kevin Webb, and Teresa Wilson (6 Caucasians, 4 African-Americans; (2) 2016: Jeffrey Dietz, R. Michael Lockey, Monica Pouncey, Glen Robertson, Jessica Starke, Bradley Steele, Wayne Streeter, Kevin Webb, and Teresa Wilson (5 Caucasians, 4 African Americans); and (3) 2017: R. Michael Lockey, Monica Pouncey, Jessica Starke, Wayne Streeter, Kevin Webb, and Teresa Wilson (3 Caucasians, 4 African Americans). [1]

Pursuant to Stewart, Defendants attach for the Court's reference a redacted version of the 2015-2017 ET Team Merit spreadsheet demonstrating names of the County employees employed on that Team for the relevant time periods and incorporates those spreadsheets herein by reference, collectively, as ***Exhibit 1***.

A. First Sr. Software Engineer Position (April 5, 2016)

On April 5, 2016, County posted the Sr. Software Engineer position. An email dated April 5, 2016 confirming that posting and a copy of the Sr. Software Engineer posting are attached hereto, respectively, as ***Exhibits 2 and 3***. No qualifications appear requiring a candidate to have the most years of experience in County employment. (Compl. ¶¶ 23, 30). Between April 5, 2016 and April 18, 2016, only four candidates applied for the position, and only one candidate qualified for an interview. After one week of not receiving additional applications, on April 22, 2016, Mr. Desai requested the

---

[1] Pursuant to N.C. Gen. Stat. 153A-98, the names of County employees and their current positions are a matter of public record, so the names and positions are not required to be redacted. N.C. Gen. Stat. 153A-98 (2016). Plaintiff was part of the ET Team and should be familiar with the racial and gender make-up of that Team contrary to Compl. ¶ 16 and which is either a deliberate misrepresentation or one of many examples of Plaintiff's inaccurate speculations and unsupported conclusions.

3

Human Resources (hereinafter, "HR") Department close the application. Positions are routinely closed prior to or extended past the posted expiration date once a qualified candidate is interviewed and selected. The application deadline in no way prevents the IS Department from conducting interviews during the open application period.

On April 25, 2016, after the announcement that Teresa Wilson ("Ms. Wilson") was the new Sr. Software Engineer, Plaintiff approached Mr. Desai and indicated an interest in the position and inquired as to the early closing of the position prior to the posted April 30, 2016 expiration date. (Compl. ¶¶ 21-22). Mr. Desai was unaware that she was interested in the position, and in response, contacted the HR Department and reactivated the position to allow Plaintiff to apply. On April 25, 2016, the HR Department reopened the application and Plaintiff applied on that date. An audit trail showing the closing change on April 22, 2016 at 4:06 p.m. and the reopening change on April 25, 2016 at 4:34 p.m. is attached hereto and incorporated herein by reference as *Exhibit 4*.

On April 29, 2016, prior to the April 30, 2016 expiration date, Plaintiff and Ms. Wilson interviewed for the position. Plaintiff and Ms. Wilson were the only qualified candidates of the five (5) total applicants. A redacted version of the Applicant Job Report for the position showing the name, number of candidates, dates and times of application, and referral status is attached hereto and incorporated herein by reference as *Exhibit 5*.[2]

---

[2] Pursuant to N.C. Gen. Stat. 153A-98, applicants are not employees of the County and their application information is not public record. The names of the applicants who were not referred for interviews and who were placed in a "failed" recruitment status have been redacted for privacy reasons and only the first initials of their first and last names remain visible. The applicant pool consisted of three (3) females and two (2) males; however,

4

Both candidates interviewed before a 3-person panel consistent with Guilford County Personnel Regulation 4 and Addendum 4.1 ("PR 4"). A true and accurate copy of PR 4 is attached hereto and incorporated herein by reference as ***Exhibit 6***. The interview panel consisted of Mr. Desai (Asian male), Mr. Solomon (Caucasian male), and Bridget Lindsay (African-American female, "Ms. Lindsay"). Each candidate was scored on the same questions to achieve a final score. The scores were sent to HR Department and the higher scoring candidate was offered the position on or about May 2, 2016.

On May 6, 2016, Plaintiff filed a grievance against the IS Department (Compl. ¶ 24) specifically for "Unfair Treatment" described as "Removing a job posting before the closing date and accepted by another employee before I could apply"; however, Plaintiff did apply on April 25, 2016 and was interviewed on April 29, 2016. The relief sought by Plaintiff in her grievance was additional training because her years of experience were insufficient to award her the position; that was the extent of her grievance. A true and accurate, but redacted, copy of Plaintiff's grievance form is attached hereto and incorporated herein by reference as ***Exhibit 7***, specifically for the purpose of demonstrating the grievance filing date versus her interview date.[3]

---

Guilford County does not obtain demographic information, such as race, gender, or national origin during the application process and they cannot be ascertained. Therefore, the names are presumed to reflect the normal gender for such names. Any such assertions by Plaintiff are merely speculation and have no basis in fact, including her assumption that originally there was only one White applicant. (Compl. ¶ 21, 24 – 25). Also, refer to Guilford County Personnel Regulation 4(G) referenced in Exhibit 6.

[3] The grievance form is partially redacted in concordance with N.C. Gen. Stat. 153A-98.

B. <u>Second Sr. Software Engineer Position (June 27, 2017)</u>

On June 27, 2017, the IS Department posted another Sr. Software Engineer position with a closing date of August 24, 2017, despite Plaintiff's assertions that she applied for the position in September 2017. (Compl. ¶ 29). A true and accurate copy of that position posting is attached hereto and incorporated herein by reference as ***Exhibit 8***. Only two candidates applied for the position on June 29, 2017 and June 30, 2017. A true and accurate, but partially redacted, copy of the Applicant Job Report is attached hereto and incorporated herein by reference as ***Exhibit 9*** for the specific purpose of showing the application dates.[4]

On September 21, 2017, Mr. Solomon discovered Plaintiff used her privileged access capabilities to gain unauthorized access to Brett Pennington's ("Mr. Pennington"), the other applicant, and Ms. Wilson's email boxes. Mr. Solomon immediately removed Plaintiff's access after Mr. Pennington confirmed he did not provide her with permissions. On September 22, 2017, Plaintiff confronted Mr. Solomon accusing Mr. Pennington of unauthorized access to <u>her</u> email box. When Mr. Solomon and Mr. Desai provided logs showing Plaintiff was removed from unauthorized access and gave her a live demonstration of the removal process, Plaintiff apologized for her accusation. However, the live demonstration revealed Plaintiff had restored her unauthorized access to Mr. Pennington's email box. Mr. Solomon told Plaintiff that Ms. Wilson and Mr. Pennington had not given authorization for access to their email boxes and that she was

---

[4] The names showing on the Applicant Job Report are a matter of public record pursuant to N.C. Gen. Stat. 153A-98 as those persons are or were employed by the County and the person awarded the position currently serves in that position. Those persons include Plaintiff and current Sr. Software Engineer, Brett Pennington.

forbidden from further access without prior authorization from Mr. Desai or Mr. Solomon. At about 4:00 p.m. on September 22, 2017, Mr. Solomon rechecked the logs and discovered Plaintiff had again restored her access without the required authorization.

Further investigation revealed Plaintiff granted herself unauthorized access to several IS Department personnel email accounts, including: (1) Mr. Desai, IS Director, accessed June 29, 2017; (2) Mr. Lawing, County Manager, (3) Graham Rothrock, HR Recruiter, accessed from July 3 through July 17, 2017; and (4) the entire Guilford County Legal Department.  Plaintiff indicated she accessed those email boxes as part of the IS Mobile Device Management ("MDM") and Barracuda projects; however, Plaintiff was never assigned to the MDM Project Team, and even if she were, that project was completed for IS and HR in January and April 2017, respectively, well prior to Plaintiff's unauthorized access. The Barracuda project was completed in 2016 . . . also well before Plaintiff's unauthorized access. Plaintiff's timing in unauthorized access was in line with her June 29, 2017 application. The email boxes she accessed belonged to persons engaged in the hiring process and handling of interview materials. Right or wrong, Plaintiff was presumed to be intercepting that information to increase her interview score.

C. Termination

On September 28, 2017, Plaintiff interviewed with Mr. Desai, Ray Willis (HR Manager), and June Harley (HR Manager). Plaintiff admitted to accessing the email boxes without receiving prior authorization. (Compl. ¶¶ 31-34). Mr. Desai denounced accessing employee email boxes without formal requests from appropriate authorities, such as the Legal Department, as was the normal procedure. Mr. Desai placed Plaintiff on

7

Administrative Leave without pay for Plaintiff's insubordination and unacceptable personal conduct in violation of Guilford County Personnel Regulation 28 ("PR 28") and exhibited unethical conduct in violation of Guilford County Ethical Standards Policy, pending further investigation pursuant to Guilford County Personnel Regulation 29 ("PR 29"). On October 18, 2017, Plaintiff was terminated from County. A true and accurate copy of Plaintiff's notice of termination is attached hereto and incorporated herein by reference as **Exhibit 10**.[5]

D. Appeal and Affirmation of Termination

On October 26, 2017, Plaintiff filed appeal of her termination to the Deputy County Manager, Clarence Grier (African American male) ("Mr. Grier") pursuant to PR 28. On October 31, 2017, Mr. Grier met with Plaintiff and confirmed her termination based on her violation of PR 28 and Ethical Standards Policy. On November 20, 2017, Mr. Lawing upheld the termination for: (1) Insubordination and failure to follow supervisory directives; (2) Displaying poor judgment and lack of integrity; (3) Creating a conflict of interest using her position to access the email boxes of individuals involved in the hiring process for a position for which Plaintiff applied; and (4) For providing false or misleading statements and information during the investigation.[6] On January 16, 2018, Plaintiff obtained employment with the City of High Point as the Server Administrator.

---

[5] Pursuant to N.C. Gen. Stat. 153A-98(b)(11), a written copy of the final decision of the County setting forth the specific acts that are the basis of the dismissal are a matter of public record and may be disclosed. The written copy of the narrative of the final decision setting forth the specific acts that were the basis of the dismissal have not yet been disclosed publicly.

[6] Although Mr. Lawing's appeal determination also constitutes a final determination of a dismissal, and thereby is a matter of public record and may be disclosed, his final written notice of his letter dated November 20, 2017 setting forth the specific acts as the basis of the dismissal have not yet been disclosed publicly.

8

## I.   STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all ***well-pleaded*** allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993) (emphasis added). Fed. R. Civ. P. 8(a)(2) requires a claim for relief to contain a short and plain statement showing the pleader is ***entitled*** to relief. Although an employment discrimination plaintiff is not required to plead a prima facie case, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002), a plaintiff is still required to allege facts sufficient to state all the elements of the plaintiff's claim. Jordan v. Alternative Res. Corp., 458 F.3d 332, 346 (4th Cir. 2006), cert. denied, 549 U.S. 1362 (2007).  However, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Plaintiff's "[f]actual allegations must be enough to raise ***a right to relief*** above the speculative level." Id. (emphasis added). "[O]nce a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563.  "A claim has facial plausibility when the plaintiff pleads factual contents that allows the court to draw the ***reasonable inference*** that the defendant is liable for the misconduct alleged." Id. at 678. (emphasis added).

9

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the Court identified allegations, no more than conclusions, not entitled to the assumption of truth. Id. at 664. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 554-55). Although the pleading requirements stated in Fed. R. Civ. P. 8 "mark . . . a notable and generous departure from the hyper-technical, code-pleading regime of a prior era…it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678. A Rule 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts *consistent with* the allegations in the complaint." Twombly, 550 U.S. at 561. (emphasis added). "[N]aked assertions devoid of further factual enhancement" will not suffice. Iqbal, 556 U.S. at 678. Therefore, even when the Court is presented with a Rule 12(b)(6) motion and holds the Complaint in the light most favorable to Plaintiff, the Court cannot allow conclusory statements in that Complaint, unsupported by and inconsistent with the facts, to serve as the truth of the matter.

Second, to the extent that well-pleaded factual allegations exist, the Court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will…be a context-specific task that requires the reviewing court to draw on its *judicial experience and common sense*." Id. at 663-64. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint has alleged—but it has not 'show[n] that the pleader is entitled

10

to relief'—it therefore should be dismissed." Id. at 679. Thus, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears to be a "more likely" cause of the complained-of behavior, the claims are not plausible and must be dismissed. Id. at 680.

Furthermore, in considering a motion to dismiss, a court may consider "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice." Barcliff at *1. The court's consideration of those documents central to plaintiff's claims, and documents sufficiently referred to in the complaint, may be done without converting the motion to dismiss into one for summary judgment. Stewart at 557. The court may use those documents because those documents were integral and explicitly relied on in the complaint. Id. The court may do so even when Plaintiff failed to introduce a pertinent document as part of her complaint. Id. "Although the court is to take the facts in the light most favorable to a plaintiff, the court 'need not accept the legal conclusions drawn from the facts, unwarranted inferences, unreasonable conclusions, or arguments, or allegations that are contradicted by documents properly designated as exhibits. Id. (emphasis added)

## II. PLAINTIFF FAILS TO PROVIDE WELL-PLEADED FACTUAL ALLEGATIONS DEMONSTRATING PLAUSIBLE ENTITLEMENT TO RELIEF FOR RETALIATION CLAIMS AND FAILS TO DEMONSTRATE REQUIRED TEMPORAL PROXIMITY.

Plaintiff's retaliation claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). In addition to the mandates issued by the court in Iqbal and Twombly regarding a party's obligation to provide more than just mere speculations and conclusory assertions in her Complaint, an action based on retaliation must be causally connected to the alleged adverse employment action. Plaintiff does not make any assertion in her

11

Complaint which rises above the speculative or conclusory threshold which would entitle her to relief. In addition, Plaintiff's basis for retaliation falls outside of the court's acceptable time required to establish temporal proximity. Therefore, Plaintiff's claims for retaliation, based on failure to promote and termination, must be dismissed as a matter of law as it related to all Defendants.

A. <u>Plaintiff's allegations fail to rise above mere speculation and conclusory allegations based on retaliation for failure to promote and termination</u>.

To survive a motion to dismiss, Plaintiff must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." <u>Iqbal</u> at 679. "At bottom, a plaintiff must nudge [her] claims across the line from conceivable to ***plausible*** to resist dismissal." <u>Wag More Dogs, LLC v. Cozart</u>, 680 F.3d 359, 365 (4th Cir. 2012). Although the court is constrained to "take the facts in the light most favorable to the plaintiff," it need not accept legal conclusions couched as facts or "unwarranted inferences, unreasonable conclusions, or arguments" nor for <u>allegations that are contradicted by documents properly designated as exhibits</u>. <u>Giarratano</u> at 302; <u>Stewart</u> at 557.

Plaintiff has failed to allege well-pleaded facts, for all claims relating to retaliation, which would allow this Court to draw a reasonable inference that Defendants are liable for the alleged misconduct. <u>See Iqbal</u> at 678. Although Plaintiff provides a Statement of Facts in her Complaint, Plaintiff's Third and Fourth Causes of Action for failure to promote based on alleged retaliation and her Seventh and Eighth Causes of Action for termination based on retaliation simply engage in a formalistic recitation of

12

the elements and fails to state how any of the facts alleged plausibly constitute retaliation or entitle her to relief. Plaintiff simply states that she engaged in a protected activity by opposing discrimination without providing this Court the actual dates of her protected activity (Compl. 57, 62, 75 & 80), which is arguably the 2016 grievance where no allegations of discrimination appear (Refer to *Exhibit 7*). Plaintiff also stated that she would have applied for the Sr. Software Engineer position [in 2017] had she not been terminated (Compl. 49, 54, 58, & 63); however, Plaintiff did in fact apply for the position on June 29, 2017, but was terminated when she was caught engaging in unauthorized access of the email boxes after her supervisor, Mr. Solomon, twice removed her access, instructed her not to access anymore email boxes without permission from him or Mr. Desai, and she insubordinately restored her access. Plaintiff admits to this conduct despite her attempts to justify the unauthorized access in violation of direct instructions for her to refrain from that conduct. (Compl. ¶¶ 31, 34).

The manner in which Plaintiff outlines the factual allegations for her claims for retaliation simply leave this Court in a position where it can only infer the mere possibility that retaliatory misconduct has occurred. Even holding Plaintiff's claims in the light most favorable to her, the Court cannot draw a reasonable conclusion that Plaintiff's alleged facts are consistent with the alleged retaliatory misconduct when she has omitted simple, relevant facts, i.e. date of protected activity (See *Exhibit 7*); has misstated the facts contrary to properly included exhibits, i.e. that she would have applied for the position, but was terminated before she could do so (***See Exhibit 9***); and has admitted to

13

engaging in conduct violative of County policy as well as federal and state law, i.e. not denying accessing the email boxes (Compl. ¶ 34). There is simply no reasonable inference that can be drawn from these set of facts for which the Court might hold Defendants liable for any retaliatory misconduct. The Court cannot permit protracted litigation on such misinformation that is not well-pleaded as required, only demonstrate the mere possibility of misconduct, or constitute a deliberate misrepresentation to this Court not worthy of entitlement to assumption of truth as shown by documents clarifying the factual allegations relied on by Plaintiff in her Complaint. Iqbal. at 664, 679; Mylan Labs, Inc., 7 F.3d at 1134. Stewart at 557. Therefore, Defendants request that the Court resist and not allow such gamesmanship. Barcliff at *3.

B. **Even if Plaintiff well-pleaded facts to sustain her retaliation claims, Plaintiff cannot demonstrate a causal connection between the protected activity and her failure to promote/hire and termination claims.**

Plaintiff cannot demonstrate a causal connection between her failure to promote/hire claims (application date of June 29, 2017) and her termination on October 18, 2017 and the filing of her grievance on May 6, 2016. When a plaintiff's complaint fails to provide direct evidence of retaliation, the court properly analyzes the retaliation claim, even in a defendant's motion to dismiss, under the burden-shifting paradigm set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 791, 802, 93 S. Ct. 1817 1973; Williams v. Prince William Cty, VA, 645 Fed. Appx. 243, 244 (4th Cir. 2016). Under the McDonnell Douglas framework, a plaintiff establishes a prima facie case of retaliation pursuant to 42 U.S.C. § 2000e and 42 U.S.C. § 1981by demonstrating (1) she engaged in

14

protected activity, (2) her employer took a "materially" adverse action against her, and (3) a causal connection existed between the activity and the adverse action. Tibbs v. Baltimore City Police Dept., WL 3655564 (D. Md. August 23, 2012); (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405 (2006); Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536 (4th Cir. 2003). The same analysis applies to race discrimination and retaliation claims under both Title VII and Section 1981. James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 376 (4th Cir. 2004).

To survive a motion to dismiss, a plaintiff must plausibly allege her statutory claim (though not a prima facie case). See McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585-88 (4th Cir. 2015), *cert. denied*, 136 S. Ct. 1162 (2016). As for causation, the Fourth Circuit has held:

> Retaliation claims, [], require the employee to show "that retaliation was a but-for cause of a challenged adverse employment action." [Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 252 (4th Cir. 2015)]; see Nassar, 133 S. Ct. at 2533 ("Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m)....").
>
> Guessous v. Fairview Prop. Investments, LLC, 828 F.3d 208, 216-17 (4th Cir.

2016). Thus, to state a retaliation claim, a plaintiff must plausibly allege a "but-for" causal connection between plaintiff's protected activity and the alleged retaliation. Id. Naked allegations of a causal connection between plaintiff's protected activity and the alleged retaliation do not state a plausible Title VII or 1981 claim. See McCleary-Evans, 780 F.3d at 585-88.

15

Although Plaintiff can make a showing of the first two elements – that she engaged in a protected activity by filing a grievance on May 6, 2016 and that she suffered the adverse employment action of failure to promote/hire and termination – Plaintiff cannot demonstrate any "but-for" causal connection. She has failed to do so by providing at least some scintilla of the comparative timing of the alleged adverse employment action in relation to her protected activity, and failing to do so even in the barest form possible. See Howard v. GC Partners, Inc., WL 2148314 *3 (M.D.N.C. May 31, 2011) (holding plaintiff has sufficiently alleged a causal connection where stated that she engaged in a protected activity under Title VII and that her employment was terminated **_soon_** thereafter.) (emphasis added); *see also*, Barcliff at *5 (noting plaintiff's complaint failed to identify the timing of such alleged adverse employment action, or appropriate comparators). ***Exhibits 7*** and ***10*** demonstrate the actual time lapse as allowed in Stewart.

Even in the Court's keeping with accepting as true all the factual allegations contained in the Complaint as true as the court states in *Iqbal*, 556 U.S. at 678, the facts Plaintiff presents in her Complaint regarding the protected activity properly place the protected activity, i.e. the filing of the grievance, in temporal proximity with her application for the first posting of the Sr. Software Engineer position on or around April 25, 2016. (Compl. ¶¶ 21, 23-24). (Refer to Exhibit 7). Plaintiff's Complaint fails to allege any further grievances filed prior to her termination October 18, 2017. In other words, her assertion that she engaged in protected activity by filing a grievance, without listing the actual date, is nothing more than a naked assertion that fails to give plausible rise to her claims as required by under McCleary.

16

The timing of Plaintiff's protected activity arising in her Complaint impliedly asserts a date of around April 2016 which is too temporally remote for the Sr. Software Engineer position for which she applied on June 29, 2017, and her termination on October 18, 2017. More than 17 or 18 months passed between Plaintiff's alleged protected activity and her failure to promote or termination claims. This lapse of time is substantially more than the three- or four-month lapse established by the courts to be substantially outside the time period to establish causal connection. Perry v. Kappos, WL 2130908 *6 (4th Cir. June 13, 2012) (holding, "Although neither we nor the Supreme Court have adopted a bright temporal line, we have held that a three- or four-month lapse between the protected activities and discharge was *too long to establish a causal connection by temporal proximity alone*.") (emphasis added). Further, the *Perry* court determined, "Even a *mere ten-week separation* between the protected activity and termination 'is sufficiently long so as to significantly weaken *even an inference* of causation between the two events.'" Perry at 6. (citing King v. Rumsfeld, 328 F.3d 145, 151 n. 5 (4th Cir.2003) (emphasis added).

A review of the facts presented in this case, simply do not provide Plaintiff with the requisite temporal proximity required to sustain her claims for failure to promote and termination based on alleged retaliatory conduct of Defendant. Therefore, in accordance with Plaintiff's failure to establish all the requisite elements to proceed successfully on her retaliation claims, Defendants are entitled to a grant in its favor of their Motion to Dismiss, and the Court should dismiss all Plaintiff's retaliation claims, with prejudice.

**III. THE COMPLAINT IS DEVOID OF FACTUAL ALLEGATIONS NECESSARY TO SUPPORT PLAINTIFF'S CLAIMS OF FAILURE TO PROMOTE AND TERMINATION BASED ON RACE DISCRIMINATION.**

In addition to the retaliation claims subject to dismissal for lack of factual basis and temporal proximity, Plaintiff's remaining claims based on race discrimination should be dismissed based on lack of reasonable inference of misconduct. A court may dismiss a complaint pursuant to Fed. R. Civ. Pro. 12(b)(6) if the complaint fails to "raise a right to relief beyond the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). "While the court must take the facts in the light most favorable to the plaintiff, the court 'need not accept the legal conclusions drawn from the facts [or] unwarranted inferences, unreasonable conclusions, or arguments.'" Giarratano at 302. In addition, the court is not required to draw plaintiff's chosen inference. See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). A plaintiff must plead sufficient facts to state a claim for relief that is "plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires more than possibility that a defendant acted unlawfully, but instead requires that the pleading allows the court to draw reasonable inference of defendant's misconduct. Iqbal, U.S., 129 S.Ct. 1937, 1949 (2009); see also Miller v. Ingles, 2009 WL 4325218 at *5 (W.D.N.C. 2009) (noting Ashcroft requires more than an "unadorned, the 'defendant-unlawfully-harmed-me,' accusation").

A. Plaintiff's Complaint fails to state facts which rise above mere speculation and conclusory allegations for her failure to promote and termination claims based on alleged race discrimination by Defendants.

Plaintiff's Complaint fails to rise above the speculative or conclusory level in several ways. In Plaintiff's Complaint, she assumes the following: (1) She had more

18

experience than her white teammate who received the job in 2016 (Compl. ¶ 23, 25); (2) Only two applicants applied for the second position in 2017 (Compl. ¶ 29); and (3) The 2017 applicant had even less experience than the 2016 applicant (Compl. ¶ 30). There is no way Plaintiff could lawfully know anyone's qualifications in relation to her own as resumes and applications are not public information, nor could she have known the undisclosed and non-public interview scores in which she scored over 20 points below the more qualified candidate. So, Plaintiff's allegations are either self-assessments or classic textbook examples of the mere speculation replete in her Complaint. "The employer has discretion to choose among equally qualified candidates provided the decision is not based upon unlawful criteria," Wileman v. Frank, 979 F.2d 30, 38 (4th Cir.1992). As to Plaintiff's self-assessments, the court has well-established that "It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Evans v. Technologies Applications & Service Co., 80 F.3d 954, 960-61 (4th Cir. 1996). As previously established, Plaintiff interviewed before a diverse, 3-person panel; a more qualified candidate was selected. In addition, when Plaintiff "did not deny" accessing of those email boxes, regardless of her proffered excuse for accessing them (Compl. ¶ 34), Plaintiff ultimately admitted to insubordination and unethical practices.

Plaintiff's termination and failure to promote was based on her multiple illegal unauthorized access and interception of email communications not authorized, specifically prohibited by her direct supervisor, and in violation of County policy. Again, in the absence of direct evidence, the Court must analyze the facts under the

19

burden-shifting paradigm. <u>Williams</u> at 244. Plaintiff's Complaint provides the very reason for her termination and failure to promote; she admitted to unauthorized access (Compl. ¶ 34) and Defendants' burden is met. (See ***Exhibit 10***). Therefore, Plaintiff's claims fall squarely into mere speculation and fail under <u>McDonnell Douglas</u>.

Even if Plaintiff had actually been more qualified, this Court has established that an employer need not hire or promote the most qualified applicant as long as it does not make such decisions with regard to race, sex, religion, color, or national origin.[7] <u>Maness v. City of High Point, NC</u>, WL 6031191 *9 (M.D.N.C. November 16, 2018). In addition, the court have refused to act as a "super-personnel department weighing the prudence of employment decisions" made by employers. <u>Id.</u> (quoting <u>DeJarnette v. Corning, Inc.,</u> 133 F.3d 293, 299 (4th Cir. 1998); see also <u>Balazs v. Liebenthal</u>, 32 F.3d 151, 159 (4th Cir. 1994) (holding the courts are not authorized to declare unlawful every arbitrary and unfair employment decision).

Clearly, the decision made by Defendants in this action were not arbitrary or unfair to Plaintiff, given her admissions to unauthorized access. Plaintiff cannot demonstrate a racial basis for her termination or failure to promote based on the facts presented in her Complaint. Plaintiff has only provided this Court with nothing more than accusations. Therefore, Plaintiff's claims racial discrimination claims must dismissed in their entirety, with prejudice.

---

[7] Defendants do not concede Plaintiff was more qualified. Although not germane to this motion, Plaintiff's assertions, while purely speculative, are factually inaccurate.

B. Plaintiff may have committed violations of Federal and State law in her unauthorized access of email boxes and any information she obtained in her illegal interception may not be used to support her allegations.

Plaintiff's unauthorized access of the email boxes in endeavoring to intercept information, arguably to bolster her interview scores, constitutes a violation of the North Carolina Electronic Surveillance Act, a Class H felony. N.C. Gen. Stat. §§ 15A-286, *et seq.* (1995). In addition to the state violation, Plaintiff's conduct constitutes a violation of the Federal Electronic Communications Privacy Act of 1986. 18 U.S.C. § 2510-22 (2008). As such, Plaintiff is restricted from using any information intercepted resulting from her unauthorized access to the email boxes as outlined herein. 18 U.S.C. § 2515 (1968). Therefore, in reviewing Plaintiff's Complaint, the Court may also review Plaintiff's criminal conduct directly related to her termination and failure to promote claims in addition to her violation of County regulations and policies and as a legitimate, non-discriminatory reason for failure to promote and to termination Plaintiff. Even in viewing Defendants' motion to dismiss in the light most favorable to Plaintiff, Plaintiff's admitted unauthorized access to email boxes, recognized insubordination in continuing to access specific email boxes in direct violation of a supervisor's instructions, and likely engagement in criminal conduct warrants a dismissal of Plaintiff's claims, with prejudice.

IV. **PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS CANNOT BE SUSTAINED AS A MATTER OF LAW.**

Plaintiff alleges racial discrimination and retaliation against Mr. Lawing, Mr. Desai, and Mr. Solomon in their individual capacities pursuant to Title VII and Section 1981. However, it is well established that supervisors cannot be held individually liable for alleged Title VII violations. Lissau v. Southern Food Services, Inc., 159 F.3d 177,

21

180 (4th Cir. 1998). In <u>Lissau</u>, the court held that only an employer may be held liable for Title VII violations, and that individual liability under Title VII "would improperly expand the remedial scheme crafted by Congress." <u>Id.</u> at 181. Accordingly, this Court cannot hold those supervisors individually liable under Plaintiff's Title VII claims and Plaintiff's claims against individual Defendants should be dismissed with prejudice as a matter of law.

Supervisors may not be held individually liable for violations of Section 1981 unless a plaintiff can affirmatively demonstrate that a supervisor intentionally caused the employer to infringe on those rights by authorizing, directing, or participating in discriminatory acts. For the same reasons outlined in Defendants' brief that retaliation and race discrimination claims should be dismissed altogether based on Plaintiff's inability to establish more than mere speculations and the lack of pretext under the McDonnell Douglas burden-shifting framework, Defendants in their individual capacity assert those same factors, that: (1) Plaintiff admitted that she engaged in the unauthorized access of email boxes of individuals involved in the hiring process (Compl. ¶ 34); and (2) Defendants independently determined Plaintiff's conduct constituted a violation of County PR regulations and ethical policies. Plaintiff's dismissal and failure to promote were not based on race; they were based solely on Plaintiff's unacceptable conduct and Defendants' endeavors to enforce County regulations and policy and continuing to hold employees, in particularly sensitive positions, to the highest code of ethics. Therefore, the claims against Defendants in their individual capacities under Section 1981 claims should be dismissed with prejudice.

## CONCLUSION

An examination of the "factual" allegations set forth in the Complaint illustrates Plaintiff's conclusions and opinions insufficient to carry her claims over the Iqbal/Twombly threshold. As a matter of law, Plaintiff's claims for failure to promote and termination based on race discrimination and retaliation should be dismissed pursuant to Rule 12(b)(6).

Wherefore, Defendants respectfully request their Motion to Dismiss be granted in full and this Honorable Court issue an Order dismissing WITH PREJUDICE Plaintiff's Complaint in its entirety.

Respectfully submitted this the  14  th day of February, 2019.

GUILFORD COUNTY ATTORNEY'S OFFICE

/s/ Taniya D. Reaves
Taniya D. Reaves
N.C. State Bar No. 51791
301 W. Market Street, Suite 301 (27401)
Post Office Box 3427
Greensboro, NC  27402-3427
Telephone: (336) 641-3852
Facsimile: (336) 641-3642
Email: treaves@guilfordcountync.gov

/s/ J. Mark Payne
J. Mark Payne
N.C. State Bar No.
301 W. Market Street, Suite 301 (27401)
Post Office Box 3427
Greensboro, NC  27402-3427
Telephone: (336) 641-3852
Facsimile: (336) 641-3642
Email: mpayne@guilfordcountync.gov

23

## <u>CERTIFICATE OF COMPLIANCE</u>

Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limits of M.D.N.C. LR 7.3(d) because this brief contains 6,248 words, excluding the parts of the brief exempted by M.D.N.C. LR 7.3(d) (The caption, signature lines, certificate of service, and any cover page or index are not included).

2.  This brief complies with the typeface and type style requirements of M.D.N.C. LR 7.1(a) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 13-point Times New Roman typeface.

Date: <u>2/14/2019</u>       GUILFORD COUNTY ATTORNEY'S OFFICE

<u>/s/ Taniya D. Reaves</u>
Taniya D. Reaves
N.C. State Bar No. 51791
301 W. Market Street, Suite 301 (27401)
Post Office Box 3427
Greensboro, NC 27402-3427
Telephone: (336) 641-3852
Facsimile: (336) 641-3642
Email: treaves@guilfordcountync.gov

*Attorney for Defendants*

24

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this the <u>14</u>th of February, 2019, the foregoing **DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

<u>TO EMAIL ADDRESS ON FILE WITH CM/ECF</u>:
Email: will.fong@hensellaw.com
Wilson F. Fong, Esq.
HENSEL LAW, PLLC
*Attorney for Plaintiff*
Post Office Box 39270
Greensboro, North Carolina 27438
Phone: (336) 218-6646
Fax:     (336) 218-6467

Respectfully submitted this the <u>14</u> th day of February, 2019.

GUILFORD COUNTY ATTORNEY'S OFFICE

<u>/s/ Taniya D. Reaves</u>
Taniya D. Reaves
N.C. State Bar No. 51791
301 W. Market Street, Suite 301 (27401)
Post Office Box 3427
Greensboro, NC  27402-3427
Telephone: (336) 641-3852
Facsimile: (336) 641-3642
Email: treaves@guilfordcountync.gov

*Attorney for Defendants*

25

**EXHIBITS TO**
**DEFENDANT'S BRIEF**
**IN SUPPORT OF MOTION TO DISMISS**

1. **EXHIBIT 1:**     ENTERPRISE TEAM MERIT SPREADSHEET

2. **EXHIBIT 2:**     APRIL 5, 2016 EMAIL CONFIRMING SR. SOFTWARE ENGINEER POSTING DATE

3. **EXHIBIT 3:**     FIRST SR. SOFTWARE ENGINEER POSTING (4/5/2016)

4. **EXHIBIT 4:**     AUDIT TRAIL OF OPENINGS AND CLOSINGS OF FIRST SR. SOFTWARE ENGINEER POSTING

5. **EXHIBIT 5:**     APPLICANT JOB REPORT FOR FIRST SR. ENGINEER POSITION (REDACTED VERSION: 4/5/2016 – 4/30/2016)

6. **EXHIBIT 6:**     GUILFORD COUNTY PERSONNEL REGULATION 4 AND ADDENDUM 4.1

7. **EXHIBIT 7:**     PLAINTIFF'S MAY 2, 2016 GRIEVANCE (REDACTED VERSION)

8. **EXHIBIT 8:**     SECOND SR. SOFTWARE ENGINEER POSTING (6/27/2017)

9. **EXHIBIT 9:**     APPLICANT JOB REPORT FOR SECOND SR. SOFTWARE ENGINEER POSTING (REDACTED VERSION: 6/27/2017 – 8/24/2017)

10. **EXHIBIT 10:**     POST-ADVERSE EMPLOYMENT ACTION NOTICE FOR PLAINTIFF (10/18/2017)