IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **MONICA POUNCEY,**<br><br>*Plaintiff*,<br><br>**v.**<br><br>**GUILFORD COUNTY, MARTY LAWING** *in his official and personal capacities,* **HEMANT DESAI** *in his official and personal capacities*, and **JEFFREY SOLOMON** *in his official and personal capacities*,<br><br>*Defendant.* | **CASE NO.: 1:18-CV-1022** |

## PLAINTIFF'S OBJECTIONS AND BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS/MOTION FOR SUMMARY JUDGMENT

**NOW COMES** the Plaintiff, Monica Pouncey ("Pouncey"), and objects and responds to the Motion to Dismiss/Motion for Summary Judgment filed by Defendants Guilford County, Marty Lawing ("Lawing"), Hemant Desai ("Desai"), and Jeffrey Solomon ("Solomon").

Case 1:18-cv-01022-WO-LPA   Document 14   Filed 03/22/19   Page 1 of 28

## OBJECTION: FED. R. EVID. 401 AND 403
### Defendants have not laid sufficient foundation to establish the relevance of its exhibits.

Plaintiff objects that Defendants' Exhibits 1, 4, 5, and 9 (Docket Entry ("D.E.") 9-1, 9-4, 9-5, & 10-4) fail to meet the requirements of Federal Rule of Evidence 401, let alone 403. Under Rule 401, evidence must be probative to be relevant, meaning it makes a fact of consequence more or less probable. Fed. R. Evid. 401. Under Rule 403, evidence must be more probative than it is prejudicial, prejudice including confusion of the issues and misleading the fact finder. Fed. R. Evid. 403.

Exhibits 1, 4, 5, and 9 appear to be some sort of internal reports, an understanding of which would require knowledge esoteric to certain of Defendant Guilford County's employees, knowledge which Plaintiff and her counsel lack and have had no opportunity to obtain. (D.E. 9-1, 9-4, 9-5, & 10-4). Defendant has not provided any evidence explaining what these documents are or how to read them, their meaning is not obvious to the uninformed observer, and Plaintiff has had no opportunity to question anyone about these documents. Defendants' Brief (which is not evidence sufficient to establish a proper foundation, *Felty v. Graves-Humphreys co.*, 785 F.2d 516, 521 (4th Cir. 1986)) does little to enlighten, referring to Exhibit 1 as an "enterprise team merit spreadsheet," Exhibit 2 as an "audit trail of openings and closings of first Sr. Software Engineer Posting," Exhibit 5 as an "applicant job report for first sr. engineer position," and Exhibit 9 as an "applicant job report for second sr. engineer position," but providing no further guidance as to what

-2-

exactly those are or how they make the facts Defendants put forth any more or less likely. (D.E. 8 at 3–4, 6, 13, 26). A series of numbers, dates and names may become useful information with sufficient guidance, but without proper foundation they do no more to make any fact more or less likely than any other random series of characters on a page.

Additionally, Defendants refers to Exhibit 1 as the basis for facts not contained in Exhibit 1. In their Brief, Defendants list the races of various employees. Defendants' Exhibit 1 has no information about employees' race, at least not in a form that a layman looking at the document for the first time could understand, and yet Defendants use Exhibit 1 to present their version of the racial makeup of Pouncey's team. (D.E. 8 at 2–3).

Because Defendants have laid no foundation to decipher the meaning of Exhibits 1, 4, 5, and 9, and have blatantly misused at least Exhibit 1, these exhibits fail to establish foundation or to meet the basic relevance tests of Rules 401 and 403 and must be stricken from the record and disregarded by the Court.

## OBJECTION: FED. R. EVID. 901 AND 902
**Defendant has not provided sufficient evidence of its exhibits' authenticity.**

Plaintiff objects that Defendants' exhibits are inadmissible under Federal Rule of Evidence 901. Under that rule, "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901.

-3-

Defendants have provided no foundation whatsoever for any of their exhibits to establish that they are what they claim they are. Defendants lack any evidence establishing what any of these documents are outside of short descriptions in their brief, which cannot be considered foundational evidence. There has been no testimony by any witnesses identifying these documents, nor has Defendant provided any evidence of a chain of custody.

To the extent Defendants may try to characterize these documents as self-authenticating public records under Rule 902 (an argument Defendants did not explicitly make in their brief, though they do briefly mention some of their exhibits' status as public records in footnotes), they do not meet Rule 902's requirements that public documents be signed and sealed, Fed. R. Evid 902(1), signed and certified, Fed. R. Evid 902(2), or certified as a copy. Fed. R. Evid 902(3). None of Defendants' exhibits bear any seal or certification of any public officer or custodian. They therefore cannot be self-authenticating and require foundational evidence.

Because Defendants have not sufficiently proven the authenticity of their exhibits, they are inadmissible and must be stricken from the record and disregarded by the Court.

## STATEMENT OF THE CASE

Pouncey filed this action on December 17, 2018, alleging eight causes of action: race discrimination for failure to promote/hire under both Title VII and 42 U.S.C. § 1981, retaliation for failure to promote/hire under both under both Title VII and 42 U.S.C. §

-4-

1981, race discrimination for termination under both Title VII and 42 U.S.C. § 1981, and retaliation for termination under both under both Title VII and 42 U.S.C. § 1981. (D.E. 1).

Defendants filed the instant Motion (D.E. 7) on February 14, 2019, after Pouncey consented to an extension of time to file an answer or responsive pleading.

Pouncey objected to Defendants' use of evidence in a dispositive motion prior to any discovery, as well as to the admissibility of the evidence itself on February 15. (D.E. 11). Pouncey, with Defendants' consent, also filed a motion for extension of time to answer pending the outcome of her objection. (D.E. 12).

On February 25, The Court overruled Pouncey's objections without prejudice, allowing her to raise those objections again in the instant Response Brief. (D.E. 13). The Court also extended Plaintiff's time to respond until March 27, 2019. (D.E. 13).

## STATEMENT OF THE FACTS

Pouncey, an African-American female, began working for Guilford County as a Software Engineer in February 2008, becoming an Email Administrator in 2011. (D.E. 1 at ¶ 11–12). As Email Administrator, her job primarily involved fixing problems with the county's email systems. (D.E. 1 ¶ 33). Pouncey's team consisted of four employees: two white employees and two African-American employees, including Pouncey herself. (D.E. 1 ¶ 16).[1]

---

[1] Defendants list the names of several employees. (D.E. 8 at 2–3). Pouncey disputes the accuracy of this list, as only four (including Pouncey) of the names listed were actually

Pouncey's supervisor from 2008 through 2014 viewed her as an excellent employee, and Pouncey received high marks on her performance reviews for those six years. (D.E. 1 ¶ 13). However, in 2014, Jeffrey Solomon (white male) took over as Pouncey's supervisor. (D.E. 1 ¶ 15). Solomon treated the two African-American employees, including Pouncey, in a disrespectful and unprofessional manner and excluded them from projects, meetings, communications, and trainings in which he included the white members of the team. (D.E. 1 ¶¶ 17–19).

In early 2016, Pouncey saw a job posting for a Senior Software Engineer, a higher-level position in Pouncey's department with a higher pay rate, with an application deadline of April 30, 2016. (D.E. 1 ¶ 20). While Pouncey was preparing her application, the posting was removed, and on April 25, five days before the posting was to close, Solomon announced that he and Desai (Asian male), his supervisor, had given the job to one of Pouncey's two white teammates. (D.E. 1 ¶ 21).

Pouncey complained first to Desai about why she was not given an opportunity to apply before her white coworker was selected before filing a discrimination grievance with Guilford County Human Resources. (D.E. 1 ¶ 22, 24). Guilford County HR told Desai and Solomon to rescind the offer and reopen the application, but even after Pouncey was

on Pouncey's team. Additionally, Defendants' Brief does not list Brett Pennington as an employee, even though Defendant's Exhibit 1 does. (D.E. 8 at 2–3). Defendants' flawed use of their own exhibits further illustrates why use of evidence outside the allegations of the complaint should not be considered in a 12(b)(6) motion to dismiss.

allowed to apply, the same white employee received the job. (D.E. 1 ¶¶ 24–25). Solomon told Pouncey that she was not selected for the position because she was not knowledgeable enough, even though she had more experience and more tenure with Guilford County than the white employee who received the job. (D.E. 1 ¶¶ 23, 26). Solomon also became particularly angry with Pouncey after her complaint and began excluding her from even more emails and meetings, many of which were necessary for her job. (D.E. 1 ¶¶ 27). He also denied her requests for additional training, even though he had told her she did not receive the Senior Software Engineer position because she was not knowledgeable enough. (D.E. 1 ¶¶ 28).[2]

In 2017, another Senior Software Engineer position was posted. (D.E. 1 ¶ 28). The only two applicants were Pouncey and her other white coworker who had not already received a Senior Software Engineer position. (D.E. 1 ¶ 29). That white employee had even less tenure with Guilford County and less experience overall than the other white employee had, and far less than Pouncey. (D.E. 1 ¶ 30).

While the position was pending, Pouncey was called into a meeting with Guilford County HR manager Ray Willis, and Desai, who told her that she had violated county policy by giving herself access to email inboxes without the users' permission. (D.E. 1 ¶

---

[2] Defendants' Brief includes a significant amount of information on this subject that is not only outside of the Complaint, but also not supported by Defendants' exhibits and is completely devoid of citation. (*See* D.E. 8 at 3–5 and n. 2 (containing roughly two dozen sentences worth of new, uncited information)).

31). Pouncey asked them to provide the policy they were talking about, but they were unable to produce it, as it did not exist. (D.E. 1 ¶¶ 32).[3] Accessing user inboxes to fix email problems was a common part of Pouncey's job as Email Administrator, and she was able to provide documents showing that she only accessed the user inboxes because she was working on an ongoing problem with help from Microsoft. (D.E. 1 ¶¶ 33–34). Nevertheless, Pouncey was suspended without pay pending an investigation. (D.E. 1 ¶¶ 35).

When Pouncey was called in at the end of the investigation, she was told that she was being terminated for using her inbox access to get an advantage in the interviewing process for the Senior Software Engineer position, which both was not true and did not make sense, as the people whose inboxes she accessed were not responsible for interviewing candidates. (D.E. 1 ¶¶ 37–40).[4] Pouncey appealed her termination, but Lawing, the County Manager, upheld it. (D.E. 1 ¶¶ 41). After Pouncey was terminated, Solomon openly gloated about it, and even boasted to her former coworkers that he was going to call the police and have her arrested. (D.E. 1 ¶¶ 42–43.)

---

[3] Notably, Defendants still have not provided any such policy. The only policy attached to their Motion is a general county hiring and selection policy that includes nothing about email access.

[4] Defendants' Brief contains one and a half pages of new information on this subject without citing to *anything whatsoever*. (D.E. 8 at 6-7). Not only is the introduction of facts outside the Complaint not allowed in a motion to dismiss (*see* Argument *infra*), but the introduction of facts in a legal memorandum of any sort without citation is completely improper.

# ARGUMENT

## I. Defendants' Motion is one for Summary Judgment under Fed. R. Civ. P. 56, not a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), and should be denied as both untimely and improperly noticed.

Defendants' Motion (D.E. 7) is an untimely Summary Judgment Motion, not a Motion to Dismiss, because Defendants introduced evidence in support of their Motion outside of that relied on in the complaint. (D.E. 9 & 10).

Generally, when ruling on a Rule 12(b)(6) motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Going beyond the complaint converts the motion into one for summary judgment. *E.I. du Pont d Nemours & Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011).

Defendants seem to recognize this and attempt to cover it by citing to *Stewart v. Johnson*, 125 F. Supp. 3d 554, 557 (M.D.N.C. 2015)[5], which does not apply to these documents. *Stewart* carves out a narrow exception when a defendant offers as exhibits to its motion "official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is

---

[5] Defendants also appear to rely for their argument on a case which they refer to with a short citation of "Giarratano at 302," but for which they never provide a full citation. (*See* D.E. 8 at 12, 18). Plaintiff located multiple cases called *Giarratano*, but was unable to ascertain to which Defendants refer as none of those located seemed to refer to this issue.

not disputed." 125 F. Supp. 3d at 554. However, Defendants do little to establish how, exactly, its exhibits fit into that exception beyond the conclusory statement that "The court may use those documents because those documents were integral and explicitly relied on in the complaint." (D.E. 8 at 11).

As discussed above, Defendants' exhibits are not "official public records" due to their lack of seal, signature, and/or certification. Fed. R. Evid. 902; *see supra*. Additionally, the *Stewart*, 125 F. Supp. 3d at 554, and *Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 396 (4th Cir. 2006), opinions they cite certainly did not intend for "official public records" to include emails between government officials or internal government documents that are not widely available. Allowing such evidence in a motion to dismiss would give every government employer a second shot at summary judgment simply by virtue of all documents it produces in the normal course of business technically being public record.

Further, nowhere that Defendants' Brief mentions *Stewart* does it cite any paragraphs from the Complaint to show that the documents are "central to plaintiff's claim" or "sufficiently referred to in the complaint. (D.E. 8 at 2–3, 11–12, 14). There is no way that Exhibits 1, 2, 4, 5, 6, or 9 could be "central to plaintiff's claim" or "explicitly relied on in the complaint" because these appear to be internal documents to which Pouncey never would have been privy. (D.E. 9-1, 9-2, 9-4, 9-5, 10-1, & 10-4). Exhibits 3, 7, 8, and 10 were arguably mentioned in the Complaint, but Defendants never made that argument. (D.E. 9-3, 10-2, 10-3, and 10-5).

However, even in the places where the Complaint vaguely mentions those exhibits, it never specifically describes or relies on any documents. For example, the Complaint states that Pouncey filed a discrimination grievance, but never describes a document like what Defendants have provided. (D.E. 1 at ¶ 24). The Complaint similarly mentions Pouncey's termination, but no document is mentioned or relied on in that paragraph. (D.E. 1 at ¶ 38). Defendants' exhibits lack the centrality necessary for them to be admitted in a Rule 12(b)(6) motion to dismiss under *Stewart*.

Finally, a key part of the *Stewart* exception is that documents may be used "so long as the authenticity of these documents is not disputed." 125 F. Supp. 3d at 554. Here, Pouncey explicitly disputes the authenticity of these documents. *See supra*. To be clear, Pouncey is not necessarily suggesting that the documents are forgeries or that Defendants are being untoward, only that she lacks the necessary assurances required by the Federal Rules of Evidence to prove that they are not, and therefore must object to their admission on authenticity grounds. Pouncey has had no opportunity for discovery to test Defendants' documents, nor has Defendant provided any of the certifications or witness testimony required by Fed. R. Evid. 901 and 902. As their authenticity is disputed, Defendants' exhibits cannot be allowed into a Fed. R. Civ. P. 12(b)(6) motion to dismiss even if the Court does consider them "central to plaintiff's claim" or "explicitly relied on in the complaint." Defendants' Motion must therefore be converted into one for summary judgment. *Stewart*, 125 F. Supp. 3d at 554.

In addition to not following *Stewart* correctly, Defendants almost explicitly admit that what they have submitted is in fact a motion for summary judgment by stating, "Plaintiff has only provided this Court with nothing more than accusations." (D.E. 8 at 20). Defendants appear oblivious to the fact that a series of "accusations" setting out the facts and legal reasons that a plaintiff is entitled to relief is the literal definition of a complaint. At the summary judgment stage, after the opportunity for discovery has been had, this would be a salient argument. However, at the motion to dismiss stage, this statement is inane. The Complaint and its attachments are the only operative documents at this point. To expect anything more is inappropriate in a motion to dismiss. However, Defendant's statement further proves that what the Court has before it is actually a motion for summary judgment rather than a motion to dismiss.

Summary judgment should "be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 n.5 (1986). Additionally, under Local Rule 56.1(a), a motion for summary judgment must be preceded by a notice of intent to file a dispositive motion.

As there has been no discovery in this case, and as Defendants filed no notice of intent to file a dispositive motion, summary judgment is premature, and Defendants' Motion for Summary Judgment (D.E. 7) should be denied.

**II.** **To the extent the Court views Defendant's Motion as a Motion to Dismiss, it should follow the ordinary Fed. R.Civ. P. 12(b)(6) standard of review, assume all facts alleged in Pouncey's Complaint to be true, and deny Defendants' Motion because Pouncey has stated claims for race discrimination and retaliation upon which relief may be granted.**

A Rule 12(b)(6) motion to dismiss is improper unless, accepting as true all of the allegations in the plaintiff's complaint and looking at the facts in a light most favorable to the plaintiff, the plaintiff is entitled to no recovery as a matter of law. *See CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 51 (4th Cir. 2011). It is not necessary for a complaint attacked by a Rule 12(b)(6) motion to dismiss to contain detailed factual allegations, and those facts alleged in the complaint must be assumed true "even if doubtful in fact." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). All a plaintiff must do is "[plead] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Defendants have complicated this normally straight-forward pleading standard by introducing evidence outside the complaint with their motion. As discussed *supra*, this means they have filed an untimely summary judgment motion, not a motion to dismiss. As a practical matter, this also creates confusion regarding what the Court should look at if it attempts to decide this as motion to dismiss. The Rule 12(b)(6) standard as stated in *Twombly* and *Iqbal* only contemplates consideration of the complaint, so the question is whether the facts that the Court must view "in a light most favorable to the plaintiff" include Defendants' exhibits. 550 U.S. at 555; 556 U.S. at 662. They do not.

-13-

At the core of the 12(b)(6) analysis, "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Here, Pouncey's Complaint contains sufficient allegations of fact to support claims of discrimination and retaliation under Title VII and Section 1981. She is therefore entitled to offer evidence to support her claims, just as Defendants have offered evidence in support of their claims.

Defendants additionally complicate the standard of review by attempting to shoehorn the *McDonnell Douglas* burden-shifting analysis into their Motion. (D.E. 8 at 14, 20, 22). The *McDonnell Douglas* burden-shifting framework is "an *evidentiary standard*, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (emphasis added). It only applies to motions for summary judgment, *not* motions to dismiss, as a plaintiff is not required to make a prima facie case in response to a 12(b)(6) motion. *Id* at 510–13.

Because, under the correct pleading standard, Pouncey has sufficiently stated claims for race discrimination and retaliation in her Complaint, the Court should deny Defendants' Motion.

*A. Pouncey has stated claims for race discrimination under Title VII and Section 1981 because she stated that Defendants repeatedly made employment decisions with a racially discriminatory animus.*

Title VII and 1981 provide complementary remedies for employment discrimination and therefore share their elements. *Patterson v. American Tobacco Co.*, 535 F.2d 257, 279 (4th Cir. 1976) (Citing *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975).

Pouncey's First and Second Causes of Action allege race discrimination surrounding the failures to promote, while Pouncey's Fifth and Sixth Causes of Action allege discrimination surrounding her termination. (D.E. 1 ¶¶ 48–56, 66–74). The failure to promote claims and the termination claims are addressed separately below.

**1. Pouncey has pleaded facts giving rise to the inference that she was passed over for the Senior Software Engineer position because of her race twice.**

A plaintiff pleads a case of discriminatory failure to promote or failure to hire by alleging that "(1) she is a member of a protected group, (2) there was a specific position for which she applied, (3) she was qualified for that position, and (4) [the employer] rejected her application under circumstances that give rise to an inference of discrimination." *Williams v. Giant Food Inc.*, 370 F.3d 423, 430 (4th Cir. 2004).

It is undisputed that Pouncey is African-American, a member of a protected class, (D.E. 1 ¶ 11; D.E. 8 at 2), that she applied for the specific position of Senior Software Engineer twice, (D.E. 1 ¶¶ 20–25, 29; D.E. 8 at 3–7), and that she was qualified for the

-15-

position. (D.E. 1 ¶¶ 23, 30; D.E. 8 at 4). Therefore, the only element at issue is whether Pouncey has sufficiently pled circumstances giving rise to an inference of discrimination. She has.

The Complaint alleges that not once, but twice, Pouncey was passed over for promotion in favor of a white colleague with less experience and less tenure with Guilford County. (D.E. 1 ¶ 25, 30). In the first instance, Defendants pulled the job posting and named white employee to the job before its natural expiration date, then gave the white employee the job again after Pouncey complained and was allowed to apply. (D.E. 1 ¶¶ 20–25). In the second instance, Pouncey's other white coworker was her only competition for the Senior Software Engineer position, and Defendants fired her before she could get the job. (D.E. 1 ¶¶ 29–41).

Defendants attempts to counter the facts of the complaint by arguing that Plaintiff could not have known the other candidates' qualifications and so they are "mere speculation." (D.E. 8 at 19). First, this argument is irrelevant under the 12(b)(6) standard of review, as facts alleged in the complaint must be assumed true "even if doubtful in fact." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, Plaintiff clearly alleged that in both instances the other candidates were her teammates. (D.E. 1 ¶¶ 21, 29). Plaintiff is entitled to the reasonable inference that she knows how long she has worked with her immediate coworkers and has had occasion to learn their qualifications through normal office interaction.

-16-

The Complaint also specifically alleges that Solomon had a discriminatory animus towards African-Americans, treating them in a disrespectful and unprofessional manner and excluding them from projects, meetings, communications and trainings in which he included the white members of the team. (D.E. 1 ¶¶ 17–19). It also alleges that Solomon was sufficiently vicious in his animus that he gloated openly about terminating Pouncey, even suggesting he would somehow have her arrested months after her separation. (D.E. 1 ¶¶ 42–43). These circumstances give rise to an "inference of discrimination," as contemplated by *Williams*. 370 F.3d at 430.

Because the Complaint has alleged sufficient facts to state a case for race discrimination in Pouncey's failure-to-promote claims, Defendant's Motion should be denied under the proper 12(b)(6) pleading standard.

### 2. Pouncey has pleaded facts giving rise to the inference that she was terminated because of her race.

A plaintiff pleads a case for discriminatory discharge by alleging that "(1) she is a member of a protected class; (2) she suffered some adverse employment action; (3) at the time of the adverse employment action, she was performing at a level that met her employer's legitimate expectations; and (4) the adverse employment action occurred under circumstances that raised an inference of unlawful discrimination." *McKiver v. General Elec. Co.*, 11 F. Supp. 2d 755, 758 (M.D.N.C. 1997) (citing *St. Mary's Honor Ctr. V. Hicks,* 509 U.S. 502, 506 (1993)).

-17-

It is undisputed that Pouncey is African-American, a member of a protected class, (D.E. 1 ¶ 11; D.E. 8 at 2), she suffered the adverse action of termination, (D.E. 1 ¶ 41; D.E. 8 at 7–8), or that her performance was satisfactory. (D.E. 1 ¶ 13).

Pouncey has further pled circumstances raising an inference of unlawful discrimination by alleging that Solomon had a discriminatory animus towards African-Americans, treating them in a disrespectful and unprofessional manner and excluding them from projects, meetings, communications and trainings in which he included the white members of the team. (D.E. 1 ¶¶ 17–19). It also alleges that Solomon was sufficiently vicious in his animus that he gloated openly about terminating Pouncey, even suggesting he would somehow have her arrested months after her separation. (D.E. 1 ¶¶ 42–43).

Adding to the questionability of the circumstances surrounding her termination, Defendants terminated Pouncey based on a policy that, even now, with their improperly submitted evidence, Defendants are unable to provide. (D.E. 1 ¶¶ 31–32; D.E. 8 at 19–20). Defendants themselves are so unsure of what, exactly, Pouncey did to deserve termination that they cannot even state with certainty that Pouncey did anything wrong in their own headings, instead speculating that "Plaintiff *may* have committed violations . . . ." (D.E. 8 at 21). Pouncey, meanwhile, has stated that she was fired for executing her ordinary job functions, even after she provided documentation to Defendants showing the propriety of her work. (D.E. 1 ¶¶ 33–34).

Because Pouncey has shown that Defendants—Solomon in particular—had a known racial animus and that she was terminated for doing her ordinary job functions based on a policy that Defendant appears to have made up on the spot and has never provided, she has sufficiently plead a case of discriminatory termination and Defendants' Motion should be denied.

B. *Pouncey has stated claims for retaliation under Title VII and Section 1981, as she has stated not only temporal proximity, but also that there was evidence of retaliatory intent during the intervening period between the protected conduct and the adverse action.*

As with race discrimination, Title VII and 1981 provide complementary remedies for retaliation and therefore share their elements. *Patterson v. American Tobacco Co.*, 535 F.2d 257, 279 (4th Cir. 1976) (Citing *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975). Pouncey's Third and Fourth Causes of Action allege retaliation surrounding the failures to promote, while Pouncey's Seventh and Eighth Causes of Action allege retaliation surrounding her termination. (D.E. 1 ¶¶ 57–65, 75–83). The failure to promote claims and the termination claims are sufficiently overlapping in fact and law to be discussed together.

The elements of a retaliation claim are: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Maryland Court of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010). Protected activities fall into two categories: participation, which involves

participation in a formal EEO complaint, and opposition, which encompasses a broad range of activities. *Laughlin v. Metropolitan Washington Airports Auth.,* 149 F.3d 253, 259 (4th Cir. 1998).

Under the opposition clause of Title VII, "'When an employee communicates to her employer a belief that the employer has engaged in ... a form of employment discrimination, that communication' virtually always 'constitutes the employee's opposition to the activity.'" *Crawford v. Metropolitan Gov't of Nashville and Davidson County, Tenn.,* 555 U.S. 271, 276-7 (2009) *see* EEOC Compliance Manual § 8–II–A(2), p. 915.004 (Aug. 2016). Complaining informally about allegedly unlawful conduct, such as sexual harassment, to company management is "classic opposition activity." *Wasek v. Arrow Energy Services,* 682 F.3d 463, 469 (6th Cir. 2012); *see also Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 173-4 (2005). This is because Title VII's framework is based on the "hope and expectation that employees will report harassment early, before it rises to the level of a hostile environment," *Boyer-Liberto v. Fontainebleau Corp.,* 786 F.3d 264, 282 (4th Cir. 2015), and that employees will "take advantage of the preventative or remedial apparatus of their employers." *Faragher v. City of Boca Raton,* 524 U.S. 775, 777-8 (1998). Because "victim is compelled by the *Ellerth/Faragher* defense to make an internal complaint," complaints to management or human resources are a protected activity. *Boyer-Liberto,* 786 F.3d at 282.

The adverse employment action requirement of a retaliation claim requires only that an action be "materially adverse," meaning that the action might deter a reasonable person from engaging in a protected activity. *See Burlington N. and Santa Fe Ry. V. White,* 548 U.S. 53, 71 (2006).

Causation in retaliation cases is normally established using circumstantial evidence such as temporal proximity and the employer's knowledge of the adverse activity. *See Dowe v. Total Ction Against Poverty in Roanoke Valley,* 145 F.3d 653, 657-8 (4th Cir. 1998). This is because "employers who discriminate are not likely to announce their discriminatory motive." *St. Mary's Honor Center Ctr. v. Hicks,* 509 U.S. 502, 534 (1993) (Souter, J., dissenting). Though temporal proximity alone will not suffice where the passage of time undermines any conclusion that the events are causally connected, *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001), the plaintiff may also establish causation by presenting circumstantial evidence of retaliatory intent during the longer intervening period between the protected conduct and the adverse action. *See, e.g., Lettieri v. Equant Inc.*, 478 F.3d 640, 650–51 (4th Cir. 2007) (holding that intervening events between protected conduct and termination showed continuing retaliatory animus).

Pouncey engaged in a protected activity when she filed a discrimination complaint in April 2016 with Guilford County HR about the first Senior Software Engineer position being closed and given to a white employee before she had the chance to apply. (D.E. 1 ¶¶ 21–24). An HR complaint is "classic opposition activity." *Wasek*, 682 F.3d at 469.

Defendants argue that Pouncey did not file a discrimination complaint, but rather a complaint of "unfair treatment. (D.E. 8 at 5, 13). To begin with, facts outside the Complaint are not permissible at this juncture for the reasons stated *supra*. Additionally, discrimination and unfair treatment are synonymous, especially to layman filling out an HR form.

Pouncey suffered three adverse actions by not receiving the first Senior Software Engineer or the second Senior Software Engineer positions and being terminated, which is not disputed. (D.E. 1 ¶ 25, 41).

Finally, Pouncey has pled sufficient circumstantial evidence to show causation. With regard to the first Senior Software Engineer position, it is undisputed that she was denied that position in favor of a white employee immediately after she filed her HR complaint in April 2016. (D.E. 1 ¶ 25). Though the temporal proximity between her complaint and the second Senior Software Engineer position in the summer/fall of 2017 and her termination in October 2017 is longer, Pouncey has pled circumstantial evidence of retaliatory intent during the intervening period. Specifically, Pouncey alleged that Solomon became angry with her, excluded her from emails and meetings necessary to her job, and denied her requests for training. (D.E. ¶¶ 26–28).

Because Pouncey has sufficiently alleged facts giving rise to claims of retaliation, Defendants' Motion should be denied.

**III. The individually named Defendants are liable in both their official and individual capacities under 42 U.S.C. § 1983, as they are government officials performing discretionary functions whose conduct violated clearly established statutory rights.**

Defendants is correct that supervisors are not normally subject to individual liability under Title VII and Section 1981. However, they are when they wield the power of the government. Congress passed Section 1983 to overcome immunity doctrines and allow citizens to obtain civil relief against an overreaching government. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.

In 1961, the Supreme Court held that public employees are individually liable Section 1983 "persons" and act under color state law while acting in their official capacities or while exercising their responsibilities under state law. *Monroe v. Pape*, 365 U.S. 167 (1961). This was extended to municipalities and local governments by *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978).

Lawing, Desai, and Solomon are all employees of Guilford County, a county organized and existing under the laws of the state of North Carolina. (D.E. 1 ¶¶ 4, 15, 21,

-23-

41). Pouncey has alleged claims under federal law (Title VII and Section 1981). The express cause of action for damages created by Section 1983 is also the exclusive remedy for the violation of Section 1981, so all Section 1981 claims against the state must go through Section 1983. *See Jett v. Dallas Independent School Dist.,* 491 U.S. 701, 731–33 (1989). As such, the individual Defendants are "persons" under Section 1983 who are liable in both their official and individual capacities for depriving any citizen of her rights under federal law.

The argument Defendants should have made is for qualified immunity, however, even this would not protect the individual defendants. Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

To begin with, qualified immunity is an affirmative defense that must be pleaded by a defendant official. *Id.* at 815. Because Defendants did not raise the defense in their brief, they have waived the immunity. Moreover, even if they had not, they would not be subject to immunity because Title VII and Section 1981's prohibition on discriminatory or retaliatory decision-making in employment is a "clearly established statutory or constitutional right of which a reasonable person would have known." *Id.* At 818.

-24-

Therefore, Pouncey's claims against the individual Defendants are proper and Defendants' Motion should be denied.

## CONCLUSION

As an initial matter, Defendants' exhibits are inadmissible, and the Court should disregard them and strike them from the record. Further, because Defendants have attempted to introduce evidence and have relied heavily on summary judgment standards, the Court should consider Defendants' Motion one for summary judgment, not a motion to dismiss. As no discovery has occurred, Defendants' Motion for Summary Judgment is untimely and should be denied.

Even if the Court considers Defendants' Motion one to dismiss, it should deny the Motion because Pouncey has pled sufficient facts to support claims of race discrimination and retaliation.

Finally, because the individually named Defendants are government officials accused of violating federal law, they are liable to Pouncey in both their official and individual capacities under Section 1983. As the individual Defendants have waived immunity defenses, for which they would not be eligible in any event, the Court should deny Defendants' request to have claims against the individual Defendants dismissed.

*Respectfully submitted on this, the 22nd day of March 2019,*

/S/ WILSON FONG

*Attorney for the Plaintiff*
NC State Bar No. 50708
HENSEL LAW, PLLC
Post Office Box 39270
Greensboro, North Carolina 27438
Phone: (336) 218-6466
Fax: (336) 218-6467
will.fong@hensellaw.com

# CERTIFICATE OF WORD COUNT

I hereby certify that the word count of this Plaintiff's Objections and Brief in Response to Defendant's Motion to Dismiss/Motion for Summary Judgment, including the body, headings, and footnotes, is 6,121 words, as measured by the word count feature of the word processing software used in drafting the document.

*Respectfully submitted on this, the 22nd day of March 2019,*

/S/ WILSON FONG
*Attorney for the Plaintiff*
NC State Bar No. 50708
HENSEL LAW, PLLC
Post Office Box 39270
Greensboro, North Carolina 27438
Phone: (336) 218-6466
Fax: (336) 218-6467
will.fong@hensellaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2019, I electronically filed the foregoing

Plaintiff's Objections and Brief in Response to Defendant's Motion to Dismiss/Motion

for Summary Judgment with the Clerk of Court using the CM/ECF system, which will

send notification of filing to the following:

> Taniya D. Reaves
> treaves@guilfordcountync.gov
> J. Mark Payne
> mpayne@guilfordcountync.gov
> GUILFORD COUNTY ATTORNEY'S OFFICE
> 301 W. Market Street, Suite 301 (27401)
> Post Office Box 3427
> Greensboro, NC 27402-3427
> treaves@guilfordcountync.gov
> *Counsel for Defendants*

> /S/ WILSON FONG
> *Attorney for the Plaintiff*
> NC State Bar No. 50708
> HENSEL LAW, PLLC
> Post Office Box 39270
> Greensboro, North Carolina 27438
> Phone: (336) 218-6466
> Fax: (336) 218-6467
> will.fong@hensellaw.com