IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MONICA POUNCEY,                    )
                                   )
              Plaintiff,           )
                                   )
     v.                            )         1:18CV1022
                                   )
GUILFORD COUNTY,                   )
MARTY LAWING, in his official      )
and personal capacities,          )
HEMANT DESAI, in his official      )
and personal capacities, and      )
JEFFREY SOLOMON, in his            )
official and personal              )
capacities,                        )
                                   )
              Defendants.          )


## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

     Before the court is Defendants' Motion to Dismiss, (Doc.

7), pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure. (Doc. 7.) Plaintiff's Complaint includes eight claims

- two for failure to promote under Title VII and 42 U.S.C.

§ 1981, two for discrimination under Title VII and Section 1981,

and four for retaliation under Title VII and Section 1981. (Doc.

1.) As a part of their motion to dismiss, Defendants attach ten

exhibits. (See Docs. 9, 10.) Plaintiff filed a response to the

Motion to Dismiss which included objections to the exhibits

attached to Defendants' motion.[1] (Docs. 11; 14.) In that Response, Plaintiff asks the court to strike all of Defendants' exhibits. (Doc. 14.) Defendants filed a Reply to Plaintiff's Response, (Doc. 15), and Plaintiff filed an objection to the propriety of Defendants' Reply under the local rules, (Doc. 16). The issues in Defendants' Motion to Dismiss, (Doc. 7), and Plaintiff's Objection to Defendants' Reply, (Doc. 16), are all ripe for ruling. For the reasons stated herein, the court will grant in part and deny in part Defendants' Motion to Dismiss. The court will sustain Plaintiff's objection to Defendants' Reply. Finally, the court will not consider any of Defendants' exhibits.

I.    **FACTUAL AND PROCEDRUAL BACKGROUND**

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint . . . ." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (citing King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016)). The facts alleged, taken as true, include the following.[2]

---

[1] Plaintiff originally filed a Notice of Objection, (Doc. 11), which this court denied without prejudice to Plaintiff raising the objections in the motion to dismiss, (Doc. 13 at 1).

[2] These facts are taken only from the Complaint. As will be explained below, the court will not consider any of Defendants' exhibits.

## A.   **Background**

Plaintiff, Monica Pouncey, is a former employee with Defendant, Guilford County. (Compl. (Doc. 1) ¶¶ 12, 14, 41.) Plaintiff is an African American female. (Id. ¶ 11.) Defendants are Guilford County, North Carolina, (id. ¶ 4), as well as individual Defendants Marty Lawing, County Manager of Guilford County; Hemant Desai, Guilford County Chief Information Officer; and Jeffrey Solomon, the Enterprise Technology Team Lead for Guilford County, (id. ¶¶ 5-7).

Pouncey started working for Guilford County as a software engineer in February 2008. (Id. ¶ 12.) In 2011, she became an email administrator on the Enterprise Technology Team. (Id. ¶¶ 14, 15.) Solomon became Pouncey's supervisor in 2014. (Id. ¶ 15.) At that time, the Enterprise Technology Team that Solomon led consisted of four employees: two white, and two African American. (Id. ¶ 16.)

After Solomon began as the team leader, he started excluding Pouncey and the other African American employee from projects, communications, and meetings. (Id. ¶ 17.) Solomon also spoke to the African American employees in a disrespectful tone that he did not use with white employees. (Id. ¶ 18.) Requests for training by white employees were granted, while requests by African American employees were denied. (Id. ¶ 19.)

### B. **The 2016 Position**

In early 2016, Pouncey saw a posting for a senior software engineer position; this was a higher-level position, with higher pay, in the same department where Pouncey was working. (Id. ¶ 20.) The opening was removed before the application deadline and before Pouncey had applied; soon after the opening was removed, Solomon and Desai announced they had given the job to one of Pouncey's white teammates. (Id. ¶ 21.)

Pouncey asked Desai why the position had been removed early. (Id. ¶ 22.) He responded that he did not think she was interested in the position and that, in any event, she was not qualified. (Id.) Around this time, Pouncey filed a complaint with human resources ("HR"); Pouncey complained about the fact that the position had been closed before the deadline and before she could apply. (Id. ¶ 24.) The position was then reopened to allow Pouncey to apply. (Id. ¶ 25.)

Pouncey was not selected for the position. (Id.) Instead, the same white employee who was originally selected still got the job. (Id.) Pouncey had been with Guilford County's technology department longer than the selected employee and had "more experience overall." (Id. ¶¶ 12, 23.) When Pouncey asked why she had not been selected, she was told she was "not knowledgeable enough." (Id. ¶ 28.)

### C. **Alleged Retaliation by Solomon**

Solomon "seemed particularly angry" with Pouncey after she filed her grievance with HR. (Id. ¶ 27.) He "began excluding her from emails and meetings that were necessary for her job." (Id.) Pouncey also asked Solomon for training to remedy the fact she was "not knowledgeable enough," but Solomon again denied her request. (Id.)

### D. **2017 Position**

In September 2017, there was another senior software engineer position that opened. (Id. ¶ 29.) The only two applicants were Pouncey and the other white employee on the Enterprise Team. (Id.) This white employee had even less experience and time with Guilford County than the previous white applicant, and "far less than Pouncey." (Id. ¶ 30.) Pouncey was an "applicant[]" for the position, (id. ¶ 29), but she was apparently terminated before the hiring decision was made, (id. ¶¶ 51, 56, 60, 65.)

### E. **Investigation and Termination**

On September 28, 2017, Pouncey was brought into a meeting with the Guilford County HR Manager, Ray Willis, and Desai to discuss a suspected violation of county policies. (Id. ¶ 31.) Desai and Willis accused Pouncey of giving herself access to email inboxes without the users' permission, all in an effort to gain an advantage in the hiring process for the 2017 Position.

(Id. ¶¶ 31, 39.) Pouncey asked Willis and Desai to provide the policy she had violated, but they did not. (Id. ¶ 32.) Pouncey, as an email administrator, regularly had to access inboxes to fix email problems. (Id. ¶ 33.) Pouncey admitted to accessing the inboxes but allegedly provided documents proving she was working on an ongoing issue "with help from Microsoft." (Id. ¶ 34.) Pouncey also alleges that of the email inboxes she accessed, none of them belonged to anyone who played a role in the hiring decision for the 2017 position. (Id. ¶ 40.) Pouncey was terminated, and on October 26, 2017, she appealed her termination to Lawing, but Lawing upheld the termination. (Id. ¶ 41.) After she was terminated, Pouncey was contacted by concerned coworkers who overheard Solomon claiming he was going to have Pouncey arrested. (Id. ¶ 43.) Solomon had also allegedly been gloating about Pouncey's termination. (Id. ¶ 42.)

### F.  **Procedural History**

Pouncey filed her EEOC charge on February 5, 2018, (id. ¶ 44), and received her right-to-sue letter on September 21, 2018, (id. ¶ 46). Pouncey filed suit in this court on December 17, 2018. (Id. at 12.) Pouncey brings eight claims: Failure to Promote under Title VII (Claim One); Failure to Promote under 42 U.S.C. § 1981 (Claim Two); Retaliation based on Failure to Promote under Title VII (Claim Three); Retaliation based on Failure to Promote under 42 U.S.C. § 1981 (Claim Four);

Discrimination under Title VII (Claim Five); Discrimination under 42 U.S.C. § 1981 (Claim Six); Retaliation based on her termination, under Title VII (Claim Seven); and Retaliation based on her termination, under 42 U.S.C. § 1981 (Claim Eight). Defendants filed their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), (Doc. 7), as well as a supporting memorandum, (Defs.' Br. in Supp. of Mot. to Dismiss ("Defs.' Br.") (Doc. 8)). Attached to the memorandum are ten exhibits. (Docs. 9, 10.) Plaintiff objected to the inclusion of the exhibits in a separate objection. (Doc. 11.) The court summarily overruled the objection without prejudice, (Doc. 13), citing to Local Rule 7.6. Plaintiff then refiled a response to Defendants' motion to dismiss that included several objections to Defendants' exhibits and requested this court to strike all exhibits. (Pl.'s Objections and Br. in Response to Defs.' Mot. to Dismiss ("Pl.'s Resp.") (Doc. 14).)[3] Defendants filed a reply, (Doc. 15), to which Pouncey objected, citing Local Rule 7.3, (Doc. 16).

---

[3] While Plaintiff requests that the court "strike" the exhibits, this court only finds it necessary to determine whether any exhibits should be considered in ruling on Defendants' motion to dismiss. As will be explained, only Exhibit Seven is properly before the court, though the court will decline to consider it.

## II.  **MATERIALS PROPERLY BEFORE THE COURT**

Before turning to the motion to dismiss, the court will first address Plaintiff's objection to Defendants' exhibits as well as Plaintiff's request to strike those exhibits. Following that analysis, the court will also address Plaintiff's objections to Defendants' Reply.

### A.  **Defendants' Exhibits**

In their memorandum in support of their motion to dismiss, Defendants rely heavily on materials they provided that are outside the Complaint. (See generally Defs.' Br. (Doc. 8).) Citing to Stewart v. Johnson, 125 F. Supp. 3d 554 (M.D.N.C. 2015), Defendants argue that this court may take judicial notice of these documents without converting their motion into one for summary judgment. (Defs.' Br. (Doc. 8) at 2.) Plaintiff disagrees, arguing that the documents provided are not central to her claim nor are they sufficiently referred to in her Complaint; she further argues that these exhibits are not adequately authenticated to permit their use at the motion to dismiss stage. (Pl.'s Resp. (Doc. 14) at 4, 9–11.) Making these arguments, Plaintiff requests the court to strike all of the exhibits. (Id. at 4.) For the reasons stated below, the court finds that only Plaintiff's Human Resources ("HR") Complaint Form, (Defs.' Br. (Doc. 8), Exhibit Seven, HR Complaint ("HR Compl.") (Doc. 10-2)), can be properly considered at this phase,

though the court will decline to do so.

A court dealing with a motion to dismiss may only consider "public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint"; even with those types of materials, a court may only consider them "so long as the authenticity of these documents is not disputed." Stewart, 125 F. Supp. 3d at 558 (quoting Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396 (4th Cir. 2006) (per curiam)); see also Gasner v. Cty. of Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995) (noting that the use of such materials has "but one limitation: the document must be of unquestioned authenticity"). The types of materials that qualify for this narrow exception include widely disseminated publications, see Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999) (considering a Dow Jones article relied on in a complaint alleging securities fraud), as well as documents the plaintiff herself helped create or assented to at another time. See Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 34 (1st Cir. 2001) (relying on a previous settlement agreement whose authenticity was not questioned by either party).

Defendants rely exclusively on Stewart in attempting to convince this court to consider their extraneous materials. (Defs.' Br. (Doc. 8) at 2.) It is noteworthy that the Stewart court cited cases where the materials included court records,

Witthohn, 164 F. App'x at 397, and a widely published news article, Phillips, 190 F.3d at 618. Stewart itself dealt with emails written by the plaintiff and notice of an official agency decision, and neither party challenged the exhibits' authenticity. Stewart, 125 F. Supp. 3d at 558.

Defendants rely on Stewart to argue a host of materials that are clearly improper at this stage of the proceedings, as briefly outlined above and more specifically explained below. Following Plaintiff's objections to the materials attached to Defendants' brief, Defendants filed a reply. In that reply brief, Defendants cast a number of unfounded and unhelpful aspersions on Plaintiff's brief. (See, e.g., Defs.' Reply (Doc. 15) at 3 ("Plaintiff's puerile arguments . . ."), and at 9 n.5 ("Plaintiff has been overwhelmingly aggressive . . . . ").) In all candor, this language is not helpful to the court, nor is it consistent with the court's reaction to the briefing. Counsel for Defendants would be well-advised to recall the holding of Iqbal — it is facts, not conclusions, that are persuasive. Given all of the hearsay statements and the absence of any persuasive supporting authority, Defense attorneys' arguments reflect a gross misunderstanding of relevant facts at this stage of the proceedings and Stewart does not save Defendants' arguments.

In their reply brief, Defendants attempt to convince this court with new arguments, including encouraging this court to

take judicial notice of certain documents pursuant to Fed. R. Evid. 201. (See Defs.' Reply (Doc. 15) at 2-8.) Even assuming that rule applies, the documents Defendants claim are public records are not properly authenticated. See, e.g., Fed. R. Evid. 902. This court will not accept counsel's unilateral authentication for consideration of the exhibits or in taking judicial notice. Nevertheless, in spite of the foregoing, this court will address each document in turn, beginning with the one document this court finds could be appropriate for consideration.

Only one document put forward by Defendants might meet the criteria outlined above: Plaintiff's own HR complaint. (HR Compl. (Doc. 10-2).) This document was produced by Plaintiff and serves as the basis for all her retaliation claims. (Compl. (Doc. 1) ¶¶ 24, 27-28, 57, 62, 75, 80.) Though Plaintiff raises some perfunctory authenticity objections to all the exhibits, Plaintiff raises no specific objection to the authenticity of a document she helped create and submitted to her employer. It bears her name and her signature. (HR Compl. (Doc. 10-2).) It is the only document the court could classify as being "of unquestioned authenticity." Gasner, 162 F.R.D. at 282. Though Exhibit Seven could be properly considered, it contains no information that alters this court's 12(b)(6) analysis. Therefore, in the interest of simplicity, the court declines to

consider Exhibit Seven.

The rest of Defendants' proffered exhibits do not qualify for consideration at this stage without converting Defendants' motion to one for summary judgment. See Blankenship v. Manchin, 471 F.3d 523, 526 (4th Cir. 2006).

Starting with Exhibit One, a "Merit Increase Spreadsheet," (Ex. 1, Doc. 9-1), the document lacks any foundation as to its authenticity. It is not clear Plaintiff ever saw this spreadsheet prior to filing her complaint. Though she may have been aware of its contents in that she knew who her coworkers were, this exhibit is (1) not self-explanatory and (2) lacks assurances of its authenticity in that it was not widely available, is not a public record in the way a court record or agency decision is, and Plaintiff played no role in producing it. Exhibit One will not be considered by the court.

In Exhibits Two, Three, and Eight, Defendants provide the internal job posting for the first senior software engineer position, (Ex. 3 (Doc. 9-3)), the email announcing the first posting, (Ex. 2 (Doc. 9-2)), and the internal posting for the second senior software engineer position, (Ex. 8 (Doc. 10-3)). Plaintiff may have seen these documents or something like them, but they, too, lack the requisite foundation of authenticity. Plaintiff objects to their inclusion, see Stewart, 125 F. Supp. 3d at 558, and Defendants have not shown how they would qualify

under Fed. R. Evid. 901. The court will not consider Exhibits Two, Three, or Eight.

Exhibits Four, Five, and Nine are also problematic. In those, Defendants provide several spreadsheets showing when application windows were opened, (Ex. 4 (Doc. 9-4)), and who applied for the two senior software engineer positions, (Ex. 5 (Doc. 9-5); Ex. 9 (Doc. 10-4)). Exhibits Five and Nine both contain captions listing them as "Internal to Department Only." (Id.) By their own terms, these are not widely available public records. The fact that they are generated by an employer who happens to be a public agency does not change the conclusion. The court will therefore not consider Exhibits Four, Five, or Nine.

In Exhibit Six, Defendants provide excerpts from its policies regarding recruitment and hiring. (Ex. 6 (Doc. 10-1).) For the same reasons the court will not consider Exhibits Two, Three, or Eight, it will also not consider Exhibit Six.

Lastly, in Exhibit Ten, Defendants provide a copy of Plaintiff's termination form. (Ex. 10 (Doc. 10-5).) The form has her name typed into the "Employee Name" space, but it lacks her signature or a date next to her signature. (Id.) The form does include the signature of the "Department Director." (Id.) The form expressly calls for Plaintiff's signature. It does not have it, but the form is already signed by an opposing party. This is

enough to conclude that the form lacks assurances of its authenticity.[4] The court will not consider Exhibit Ten.

In conclusion, only Exhibit Seven, Plaintiff's HR Complaint, (Doc. 10-2), could be considered by the court in its analysis of Defendants' Motion to Dismiss. Since that Exhibit would have no effect on the court's analysis, however, it declines to consider it. No other exhibits should or will be considered by the court.

The court now turns to Defendants' Reply and Plaintiff's objection to that Reply.

**B.    Defendants' Reply Brief and the Attached Exhibit**

Defendants filed a Reply Brief that raised new arguments in an effort to convince the court that the exhibits in their

---

[4] The court also notes that the form's narrative explaining Plaintiff's termination contains information that will be addressed in discovery, yet that critical information has been redacted by Defendants. (Defs.' Br. (Doc. 8) Ex. 10, Termination Form (Doc 10-5).) According to Defendants, that is necessarily so because "[t]he written copy of the narrative of the final decision setting forth the specific acts that were the basis of the dismissal have not yet been disclosed publicly." (Defs.' Br. (Doc. 8) at 8 n.5.) As noted by the Third Circuit, the exception that allows materials outside the complaint exists, in part, to ensure plaintiffs do not get to selectively quote from documents in a way that is disingenuous and misleading. In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). That purpose would be turned on its head by allowing Defendants to provide some, but not all, of this critical document. The court also notes that, even though the facts surrounding Plaintiff's termination are apparently not ready for public disclosure, Defendants dedicate a significant portion of their brief to just such facts. (See Defs.' Br. (Doc. 8) at 6-8.)

motion were sufficiently authenticated to fit the exception described in Stewart. (Doc. 15.) Plaintiff, pursuant to Local Rule of Civil Procedure 7.3(h), objects to two parts of Defendants' Reply: (1) Defendants' raising of new matters in the form of arguments based on Federal Rules of Evidence 201 and 801, and (2) the use of a new exhibit in their reply. (Doc. 16 at 1–2.) Plaintiff does not move this court to strike the Reply. (Id.) The court will sustain Plaintiff's objections and will therefore not consider Defendants' Reply in its analysis. Local Rule 7.3(h) governs reply briefs and states that "[a] reply brief is limited to discussion of matters newly raised in the response." LR7.3(h). Courts in this district interpreting Local Rule7.3(h) have consistently held that "[r]eply briefs . . . may not inject new grounds" for argument." Triad Int'l Maint. Corp. v. Aim Aviation, Inc., 473 F. Supp. 2d 666, 670 n.1 (M.D.N.C. 2006). It is also improper, under Local Rule 7.3(h), to wait until a reply brief to provide support for an unsupported argument made in a party's first motion. See Jarvis v. Stewart, No. 1:04CV00642, 2005 WL 3088589, at *1 (M.D.N.C. Nov. 17, 2005). Finally, as Local Rule 7.3(h) itself declares, replies are limited to matters "newly raised" in a responsive pleading. Henry v. N.C. Acupuncture Licensing Bd., No. 1:15CV831, 2017 WL 401234, at *4 (M.D.N.C. Jan. 30, 2017). In sum, Local Rule 7.3(h) exists to give the replying party a

chance to rebut newly raised arguments, not to give the replying
party an unfair advantage in having a chance to make new
arguments that should have been raised initially. See id.; see
also Tyndall v. Maynor, 288 F.R.D. 103, 108 (M.D.N.C. 2013);
Campbell v. Town of S. Pines, No. 1:03CV00892, 2005 WL 1802405,
at *21 (M.D.N.C. July 28, 2005).

Here, Defendants asserted their right to use exhibits in
their original motion but provided minimal support for that
assertion. (Defs.' Br. (Doc. 8) at 2.) The matter of
authenticity was indeed raised by Defendants in their brief.
(Id.) Plaintiff addressed this argument in her Response. (Pl.'s
Resp. (Doc. 14) at 4, 10-12.) In their reply, Defendants put
forward new arguments to support their contention that their
exhibits fit under the exception outlined in Stewart. (Doc. 15.)
This is precisely the kind of briefing tactic that Local Rule
7.3(h) seeks to prevent. The court will therefore not consider
Defendants' Reply, (Doc. 15), or its additional exhibit, (Doc.
15-1).

## III. **MOTION TO DISMISS ANALYSIS**

### A.    **Standard of Review**

Defendants move to dismiss the Complaint under Federal Rule
of Civil Procedure 12(b)(6).

A plaintiff's complaint only needs to include "a short and
plain statement of the claim showing that he is entitled to

relief." <u>Glover v. United Parcel Serv., Inc.</u>, Civil Action No.
6:16-1985-TMC, 2017 WL 1160420, at *2 (D.S.C. Mar. 29, 2017)
(quoting Fed. R. Civ. P. 8(a)(2)) (alterations in original). To
survive a Rule 12(b)(6) motion, "a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>,
556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>,
550 U.S. 544, 570 (2007)). A claim is plausible on its face if
"the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable" and
demonstrates "more than a sheer possibility that a defendant has
acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550
U.S. at 556–57). When ruling on a motion to dismiss, this court
accepts the complaint's factual allegations as true. <u>Iqbal</u>, 556
U.S. at 678. Further, this court liberally construes "the
complaint, including all reasonable inferences therefrom, . . .
in plaintiff's favor." <u>Estate of Williams-Moore v. All. One
Receivables Mgmt., Inc.</u>, 335 F. Supp. 2d 636, 646 (M.D.N.C.
2004) (citation omitted). This court does not, however, accept
legal conclusions as true, and "[t]hreadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.
Employment discrimination complaints must meet this plausibility
standard; however, the plaintiff is not required to make out a

prima facie case of discrimination or satisfy any heightened

pleading requirements at the motion to dismiss stage.

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002); McCleary-

Evans v. Md. Dep't of Transp., 780 F.3d 582, 584-85 (4th Cir.

2015). The plaintiff need only plead facts that permit the court

to reasonably infer each element of the prima facie case.

McCleary-Evans, 780 F.3d at 585; see also Coleman v. Md. Ct.

App., 626 F.3d 187, 191 (4th Cir. 2010) (stating that a

complaint must "assert facts establishing the plausibility" that

plaintiff was terminated based on race).

### B.    **Individual Defendants**

Before addressing the underlying claims, the court first

addresses Plaintiff's suit against individual defendants.

Plaintiff is proceeding against Defendants Lawing, Desai, and

Solomon in both their official and personal capacities. (Compl.

(Doc. 1) at 1.) For the reasons stated below, the court will

dismiss all Title VII claims against the individual defendants,

but the court will deny Defendants' motion as to the Section

1981 claims against individual defendants.

"Supervisors are not liable in their individual capacities

for Title VII violations." Lissau v. S. Food Serv., Inc., 159

F.3d 177, 180 (4th Cir. 1998) (emphasis added); Blakney v. N.C.

A&T State Univ., No. 1:17CV874, 2019 WL 1284006, at *7 (M.D.N.C.

Mar. 20, 2019) (citing Birkbeck v. Marvel Lighting Corp., 30

F.3d 507, 510-11 (4th Cir. 1994); <u>Lissau</u>, 159 F.3d at 178). For

this reason, all Title VII claims against defendants in their

personal capacities will be dismissed.

Though there is some dispute about whether supervisors may

be sued individually in their <u>official</u> capacities under Title

VII,[5] this court is unpersuaded that <u>Lissau</u> does not also

prohibit such suits. See <u>Blakney</u>, 2019 WL 1284006, at *8 n.11;

<u>Lane v. Lucent Techs., Inc.</u>, 388 F. Supp. 2d 590, 595 (M.D.N.C.

2005); <u>Jones v. Tyson Foods, Inc.</u>, 378 F. Supp. 2d 705, 708

(E.D. Va. 2004), <u>aff'd</u>, 126 F. App'x 106 (4th Cir. 2005) ("The

Fourth Circuit's decision in <u>Lissau</u> makes it clear that an

employee who claims that she has been sexually harassed in the

workplace must make her claim against her employer and not

against the supervisor whom she claims sexually harassed her.").

Following the reasoning of these cases, this court will dismiss

all Title VII claims against individual defendants in their

_____

[5] See <u>Paroline v. Unisys Corp.</u>, 879 F.2d 100, 104 (4th Cir.
1989) <u>vacated on other grounds</u>, <u>Paroline v. Unisys Corp.</u>, 900
F.2d 27 (4th Cir. 1990) (en banc) (holding that individuals may
be held liable for Title VII violations as "employers" as long
as the individual "serves in a supervisory position and
exercises significant control over the plaintiff's hiring,
firing or conditions of employment," but failing to discern
between individuals being sued in an individual versus official
capacity); <u>Scannell v. Bel Air Police Dep't</u>, 968 F. Supp. 1059,
1067 (D. Md. 1997) (collecting cases) ("[A] long line of
authority makes plain that individuals may be sued in their
official capacity if they are substantially identified with the
defendant organization named in the EEOC charge.").

official capacities as well.

As for Defendants' motion to dismiss any Section 1981 claims against the individual defendants, the court denies that motion for failure to comply with the Local Rules. Defendants' brief on Section 1981 and individual liability is completely devoid of citations to any supporting authorities. (See Defs.' Br. (Doc. 8) at 22.) That portion of Defendants' opening brief is therefore in violation of Local Rule of Civil Procedure 7.2. Local Rule 7.2(a)(4) requires opening briefs to contain "[t]he argument, which shall refer to all statutes, rules, and authorities relied upon." LR7.2(a)(4); see also Pettiford v. City of Greensboro, 556 F. Supp. 2d 512, 531 n.22 (M.D.N.C. 2008) (noting that failure to quote specific evidentiary rules in an objection could result in a failure to preserve the issue). "Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly or else forever hold its peace." Kirkman v. Tison, No. 1:09CV886, 2012 WL 4891624, at *4 (M.D.N.C. Oct. 15, 2012) (alterations in original) (quoting Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988)). Instead of trying to read Defendants' collective mind regarding their arguments against individual liability under Section 1981,

a particularly complex issue,[6] the court will deny the motion to dismiss Plaintiff's Section 1981 claims against the individual defendants; however, where Plaintiff has failed to plausibly allege any claim at all, those claims will be dismissed as to all defendants. As explained below, Plaintiff has failed to plausibly allege any retaliation claim, so those claims (Claims Three, Four, Seven, and Eight) will be dismissed as to all Defendants. Since Plaintiff has plausibly alleged her Section 1981 failure-to-promote (Claim Two) and wrongful termination (Claim Six) claims, the motion to dismiss those claims as against the individual defendants will be denied without prejudice.

## C.  **Analysis of Plaintiff's Claims**

The court will now turn to the analysis of Plaintiff's underlying claims.

Title VII and Section 1981 each prohibit employment discrimination on the basis of race. 42 U.S.C. § 2000e-2(a)(1); 42 U.S.C. § 1981. A race-based employment discrimination claim must assert that the plaintiff "belongs to a racial minority"

---

[6] This is especially true in the Fourth Circuit. See Howell v. N.C. Cent. Univ., No. 1:16CV576, 2017 WL 2861133, at *12 (M.D.N.C. July 5, 2017) ("[T]here is an absence of controlling precedent on the specific question whether § 1981 claims against government officials in their personal capacities are precluded." (internal quotations and citations omitted)).

and was either not hired, fired, or suffered some adverse employment action due to his race. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see also Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 n.1 (4th Cir. 2002) (stating that the legal standard is the same under both Title VII and Section 1981).

## 1. Claims One and Two: Failure to Promote (Title VII and Section 1981)

Plaintiff's first and second claims allege discrimination in Defendants' failure to hire her for the senior software engineer position that was posted in September 2017. (Compl. (Doc. 1) ¶¶ 29, 48–56.)[7] Defendants, relying upon facts that are not properly before the court on this motion to dismiss, argue that Plaintiff was terminated for nondiscriminatory reasons before a hiring decision was made. (Defs.' Br. (Doc. 8) at 6–7.)

---

[7] The court notes that Plaintiff does not expressly tie her claim to the September 2017 posting, but only does so implicitly. (See (Compl. (Doc. 1) ¶¶ 51, 56 ("Pouncey was terminated before she could apply . . . .").) Indeed, Plaintiff could not now sue under Title VII for a failure to promote in May 2016 since she did not file her EEOC Charge until February 5, 2018. "A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . ." 42 U.S.C. § 2000e-5(e)(1). An EEOC charge must be filed within 180 days of each discrete action of discrimination. Id.; Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). Failure to promote is a discrete act that must be covered by the EEOC charge. Morgan, 536 U.S. at 114. As for Plaintiff's Section 1981 claims, they are not based on the May 2016 posting, so the court does not address that issue in this Memorandum Opinion and Order.

Again referring to facts not before this court, Defendants further argue that Plaintiff could not have known if she was more qualified than the other candidates, and that the reason for Plaintiff's termination was nondiscriminatory. (Id. at 20.) Defendants argue that Plaintiff herself admits to the nondiscriminatory reason for her termination. (Id. (citing Compl. (Doc. 1) ¶ 34).) Because this court will not consider Defendants' exhibits, and Defendants' arguments rely upon facts not before this court, this argument is not persuasive.

This court finds that Plaintiff has plausibly alleged a claim for failure to promote under both Title VII and Section 1981. Because failure to promote claims under Title VII and Section 1981 are analyzed under the same framework, the court directs the following analysis at both claims. See Bryant v. Aiken Reg'l Med. Ctrs Inc., 333 F.3d 536, 544-45 (4th Cir. 2003).

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under that provision, it is unlawful for an employer to not promote an employee for racially discriminatory reasons. See, e.g., Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994). In order

for a plaintiff to make out a prima facie case of failure to promote based on race, she must allege facts that allow this court to infer the following elements: "(1) that she is a member of a protected group; (2) that she applied for the position in question; (3) that she was qualified for the position; and (4) that [defendant] rejected her for the position under circumstances giving rise to an inference of unlawful discrimination." <u>Robbins v. Rowan Vocational Opportunities, Inc.</u>, No. 1:16CV310, 2018 WL 2338795, at *3 (M.D.N.C. May 23, 2018) (citing <u>Carter</u>, 33 F.3d at 458). These elements are not "intended to be rigid, mechanized or ritualistic." <u>See</u> <u>Swierkiewicz</u>, 534 U.S. at 512.

There is no dispute that Plaintiff, an African American female, is a member of a protected class. Apparently, there is also no dispute that Plaintiff applied for the senior software

engineer position that was posted in September 2017.[8] Defendants

do dispute Plaintiff's allegations that she was qualified for

the position and that she was rejected for the position under

circumstances giving rise to an inference of unlawful

discrimination.

### a.    Third Element: Qualified for Position

Regarding qualifications for a position, a plaintiff's raw

assertion that she was qualified is insufficient to meet the

12(b)(6) standard. See McKissick-Melton v. N.C. Cent. Univ., No.

1:16-CV-605, 2016 WL 6806234, at *2-3 (M.D.N.C. Nov. 17, 2016);

McCaskey v. Henry, No. 3:10-CV-390-GCM, 2012 WL 1118851, at *3

(W.D.N.C. Apr. 3, 2012). At the motion to dismiss stage,

however, a plaintiff need not conclusively establish that they

were as or more qualified for the position than the employee who

---

[8] Plaintiff is not consistent in her allegations about whether she applied for the position. In her Complaint, she never expressly states that she applied for the September 2017 position, only alleging once that she was one of two "applicants" for the position. (Compl. (Doc. 1) ¶ 29.) On the other hand, Plaintiff states three times that she "would have applied . . . had she not been terminated." (Id. ¶¶ 49, 54, 58.) In her Response to Defendants' motion to dismiss, Plaintiff now claims she applied for the September 2017 position. (Pl.'s Resp. (Doc. 14) at 15.) To support this proposition, Plaintiff cites not her Complaint, but Defendants' motion to dismiss. (Id.) Despite these inconsistencies, when viewing the Complaint in a light most favorable to Plaintiff, the court concludes that she has adequately alleged that she applied for the September 2017 position. The facts as determined at a later stage may establish that this finding is incorrect.

was promoted. See Alexander v. City of Greensboro, 762 F. Supp. 2d 764, 795 (M.D.N.C. 2011). A plaintiff must only allege sufficient facts to support the reasonable inference that they were at least as qualified for the position as the chosen candidate, see id., and thus raise the right to relief "above the speculative level," McCleary-Evans, 780 F.3d at 585 (quoting Twombly, 550 U.S. at 555).

On this prong, Plaintiff has alleged enough facts to raise her right to relief above the speculative level. At the time she applied for the September 2017 software engineer position, she had been with the Guilford County technology department for more than eight years. (See Compl. (Doc. 1) ¶ 12.)[9] She first served as a software engineer, then as an email administrator. (Id. ¶¶ 12, 14.) According to the Complaint, when she applied for the September 2017 senior engineer position, the only other candidate was someone with less experience and less time employed with Guilford County. (Id. ¶ 30.) As in Alexander, it is unclear what qualifications this other candidate possessed,

---

[9] Of course, length of tenure with an employer is not, without more, necessarily enough to establish one's qualification for a job. See, e.g., Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 270 (4th Cir. 2005). With certain exceptions, the qualifications for the position that were actually set by Defendants will eventually control the analysis. Id. At this stage, however, Plaintiff's experience in the same department where she would have been working in the new position is a relevant fact.

but that employee was allegedly afforded training that was denied to Plaintiff and the other African American on the Enterprise Technology Team. (Id. ¶ 19.) These allegations are enough at this stage. See Taylor v. N.C. Dep't of Revenue, No. 3:12-CV-860, 2014 WL 1315990, at *2 (W.D.N.C. Apr. 1, 2014). Indeed, even the Fourth Circuit, when discussing Swierkiewicz, seemed to suggest that similar allegations would plausibly support a claim for failure to promote. See McCleary-Evans, 780 F.3d at 586 ("Swierkiewicz alleged specifically that the new chief underwriting officer was 'less experienced and less qualified' for the position because he 'had only one year of underwriting experience at the time he was promoted,' whereas Swierkiewicz 'had 26 years of experience in the insurance industry.' . . . [T]his last detail is precisely the kind of allegation that is missing from McCleary-Evans' complaint . . . .").

Plaintiff herself does raise a possible issue with her qualification for both the 2016 and 2017 positions. After she was not selected for the 2016 position, Plaintiff alleges she was informed she was "not knowledgeable enough" for the job. (Compl. (Doc. 1) ¶ 26.) This statement does not change the analysis at this phase — Plaintiff also alleges that African American employees were denied the training needed to gain whatever knowledge they lacked for promotion. (Id. ¶¶ 19, 21,

28, 29.) Claiming Plaintiff was not knowledgeable enough while also refusing her training that was allegedly provided to white employees is all sufficient to permit an inference of discrimination, creating an issue that cannot be resolved on a motion to dismiss.

The court concludes that Plaintiff has alleged facts plausibly supporting the inference that she, an eight-year veteran of the Guilford County technology department, was qualified[10] for a senior posting in that same department.

### b. **Discriminatory Intent**

Plaintiff has also alleged sufficient facts to support the fourth element of the prima facie case, discriminatory intent. "A showing that a member outside of the protected class received

---

[10] Of course, another important qualification for any internal promotion is that the employee be an employee of the organization within which she seeks promotion. See Oliver v. Nat'l Beef Packing Co., LLC, 294 F. App'x 455, 458 (11th Cir. 2008); Johnston v. Centurylink, Inc., No. C11-5588 BHS, 2012 WL 5295147, at *6 (W.D. Wash. Oct. 26, 2012). In both of those cases, plaintiffs were unable to bring failure to promote claims since they were not employed at the time the promotion decision was made. Unlike the present case, however, both of those decisions were rendered at summary judgment, after the plaintiffs had a chance to probe the reasons for their termination. A similar decision would be premature when, as here, a plaintiff facing a motion to dismiss has plausibly alleged that her employer was acting with discriminatory intent leading up to her termination. Prima facie standards are evidentiary standards, not pleadings standards, and were not created as "rigid, mechanized or ritualistic" schemes of proof. Swierkiewicz, 534 U.S. at 512.

a promotion instead of the plaintiff is sufficient to create an inference of discrimination" and thus survive a motion to dismiss. McCaskey v. Henry, 461 F. App'x 268, 270 (4th Cir. 2012) (citing Carter, 33 F.3d at 458); Rodriguez v. Elon Univ., No. 1:17CV165, 2018 WL 1997987, at *5 (M.D.N.C. Apr. 27, 2018), aff'd, 751 F. App'x 395 (4th Cir. 2018). Plaintiff alleges that the position she sought in September 2017 was filled by a white coworker. (Compl. (Doc. 1) ¶ 30.) Plaintiff also alleges that the previous senior software engineer position was filled by another white coworker, and that in her team of four, the two white employees were chosen over her both times. (Id. ¶¶ 19, 23, 30.) Both facts support a plausible allegation that Plaintiff's termination was racially motivated.

Further, if a plaintiff is denied the training necessary for a promotion that is given to nonminority employees, then that denial can also serve as evidence of discrimination. See Alexander, 762 F. Supp. at 795 (discussing a situation where an African American police officer was denied funding to attend a certification course); see also Patterson v. McLean Credit Union, 491 U.S. 164, 217–18 (1989) (Brennan, J., concurring in part, dissenting in part) (abrogated by statute on other grounds) (noting that failing to train a plaintiff for a position can be one of the "innumerable different ways" a plaintiff can prove intentional discrimination).

When Plaintiff was not promoted in May 2016, she was told
it was because she was "not knowledgeable enough." (Id. ¶ 26.)
However, when Plaintiff asked for the training she needed to
gain that knowledge, Solomon denied her request. (Id. ¶ 28.)
Such training had been denied to Plaintiff and the other African
American employee in her section, but it had been provided to
the two white employees. (Id. ¶ 19.) Both of those white
teammates were eventually given the jobs for which Plaintiff
applied. (See id. ¶¶ 21, 29, 51.) These facts support an
inference of discriminatory intent.

For these reasons, the court finds that Plaintiff's First
and Second Claims should be allowed to proceed against Defendant
Guilford County. Regarding individual defendants, as stated
above in Section III.B, Claim One will be dismissed against all
individual defendants, but Claim Two will proceed as to the
individual defendants, as Defendants have failed to put forth a
persuasive argument under the Local Rules.

### 2. Claims Five and Six: Discrimination Under Title VII and Section 1981

Plaintiff's Fifth Claim is for discrimination under Title
VII, and her Sixth Claim is for discrimination under Section
1981. In both claims, Plaintiff alleges that her October 2017
termination was motivated by racial bias. (Compl. (Doc. 1)
¶¶ 69, 74.) Defendants' counter with factual assertions outside

the Complaint, and some outside their proffered exhibits, to show that Plaintiff was terminated for violating county policies. (Defs.' Br. (Doc. 8) at 7-8.) Defendants rely heavily on these exhibits, (see id. at 11, 19-20), most of which, for the reasons stated above, are not proper on a motion to dismiss. Staying within the Complaint, Defendants do assert that Plaintiff herself admits to the nondiscriminatory reason for her firing. (Id. at 20.) For the reasons stated below, the court finds that Plaintiff has plausibly alleged discrimination claims under Title VII and Section 1981 relating to her termination.

As with Plaintiff's claims for failure to promote, her claims for discrimination under Title VII and Section 1981 are analyzed under the same framework. See, e.g., Wilson v. Legal Assistance of N. Dakota, 669 F.2d 562, 563 (8th Cir. 1982); Dove v. United Parcel Serv., Inc., 912 F. Supp. 2d 353, 361 (M.D.N.C. 2012) (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)). Plaintiff offers no direct evidence of discriminatory intent behind her termination, so she proceeds under the McDonnell Douglas burden-shifting framework.

Under the McDonnell Douglas framework, a plaintiff must allege facts allowing the court to infer the following elements: that "(1) [she is a member of a protected class; (2) [she] 'suffered an adverse employment action'; (3) [her] job performance was satisfactory; and (4) the adverse employment

action occurred 'under circumstances giving rise to an inference of unlawful discrimination.'" Brown v. Gibson, No. 4:17-CV-180-FL, 2018 WL 4113339, at *5 (E.D.N.C. Aug. 29, 2018) (quoting Adams v. Trs. of the Univ. of N.C.-Wilmington, 640 F.3d 550, 558 (4th Cir. 2011); Griggs v. Casual Corner Grp., Inc., No. 3:02CV277, 2005 WL 1983888, at *7 (W.D.N.C. Aug. 10, 2005); see Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001) (ADA case).

The fourth element, discriminatory intent, is satisfied if "similarly-situated employees outside the protected class received more favorable treatment." White, 375 F.3d at 295. An inference of discriminatory intent can also be made when there are multiple motives behind an employer's action; discrimination need not be the only motivation behind an employer's adverse action, but it must have been a "motivating factor." See Desert Palace, Inc. v. Costa, 539 U.S. 90, 101 (2003); Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 317 (4th Cir. 2005). What is more, "[a]fter Desert Palace, . . . a plaintiff need not present direct evidence of discrimination, but must only present sufficient evidence that racial (or other illegal) discrimination motivated the employer's adverse employment decision." Jones v. Southcorr, L.L.C., 324 F. Supp. 2d 765, 774 (M.D.N.C.), aff'd, 117 F. App'x 291 (4th Cir. 2004). It is not necessary that a plaintiff show that she was terminated under

circumstances where members outside the protected class were not; instead, an inference of discrimination can be drawn from differential treatment leading up to the termination. <u>See Rowland v. Am. Gen. Fin., Inc.</u>, 340 F.3d 187, 192–93 (4th Cir. 2003) (discussing <u>Desert Palace</u> and noting the series of acts where plaintiff was treated differently than employees outside protected class).

Defendants do not contest that Plaintiff is a member of a protected class or that she suffered an adverse employment action in the form of her termination. Defendants implicitly contest the satisfactory-performance prong[11] and expressly contest any inference of discriminatory intent.

Plaintiff alleges facts that give rise to a reasonable inference of discriminatory motivation in Defendants' decision

---

[11] Since Defendants do not expressly raise the satisfactory performance element, the court briefly addresses it here. Defendants' version of the events surrounding Plaintiff's termination portray her as unqualified in that she allegedly violated county policies. (Defs.' Br. (Doc. 8) at 21–22.) Whatever the merit of Defendants' claims, at the motion to dismiss phase, the complaint generally controls, and this Complaint alleges facts that, when taken as true, portray Plaintiff as an email administrator accessing inboxes as a part of her duties. (Compl. (Doc. 1) ¶¶ 33-34.) Further, Plaintiff alleges she had been an email administrator since 2011, meaning she had retained her job for almost seven years prior to her termination. (<u>Id.</u> ¶¶ 14, 37-38.) These facts give rise to the reasonable inference that her performance had been satisfactory leading up to the inbox access incident in September/October 2017.

to terminate her. Of the four team members on the email Enterprise Technology Team, the African American members were both denied training that would have helped them to advance. (Compl. (Doc. 1) ¶ 19.) When Plaintiff was told she was "not knowledgeable enough" for the first senior software engineer position, she asked for training, only to be denied. (Id. ¶ 28.) The first senior software engineer position was filled by a white employee with less experience on the team than Plaintiff. (Id. ¶ 23.) According to the Complaint, Solomon excluded the African American employees from emails and meetings and would speak to them in a disrespectful tone he did not use with white employees. (Id. ¶¶ 17–19.) The second senior software position was filled by the other white employee, who had even less experience than the first and "far less" than Plaintiff. (Id. ¶ 30.)

When Defendants started their initial investigation, they accused Plaintiff of violating a policy they could not cite or produce. (Id. ¶ 32.) Plaintiff admitted to accessing the inboxes of others, but allegedly provided proof that the access was pursuant to an ongoing technical issue she was helping address. (Id. ¶ 34.) After she was terminated, Plaintiff was contacted by concerned coworkers; they were concerned because Solomon had allegedly been boasting about getting her fired and was even threatening to have her arrested. (Id. ¶¶ 42–43.)

These facts, taken as true, support a reasonable inference that Plaintiff's termination was motivated, at least in part, by racial animus. The court finds Plaintiff has plausibly alleged a racially discriminatory motive in her termination. Plaintiff alleges facts about how African Americans were excluded from training, meetings, emails, and were denied promotions. That alleged course of conduct is sufficient, at this stage, to infer a racially discriminatory motive.

Since Plaintiff has alleged facts that plausibly support her claim for wrongful termination, Defendants' motion will be denied as to Claims Five and Six against Defendant Guilford County. As stated above in Section III.B, Claim Five will be dismissed as to all individual defendants, but Claim Six against individual defendants will proceed.

### 3. <u>Retaliation: Claims Three, Four, Seven, and Eight</u>

Plaintiff's Third and Seventh Claims are for retaliation under Title VII; Claims Four and Eight are for retaliation under Section 1981. For the reasons explained below, the court finds that Claims Three, Four, Seven, and Eight should all be dismissed as against all Defendants.

It is unlawful for an employer to "discriminate against any of his employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.

42 U.S.C. § 2000e-3(a). "A prima facie retaliation claim under 42 U.S.C. § 1981 has the same elements" as one under Title VII. Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015). "To establish a prima facie case of retaliation . . . , a plaintiff must prove (1) that she engaged in a protected activity, as well as (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events." Id. (internal citations and quotations omitted). Defendants do not challenge Plaintiff on the first or second prong. (Defs.' Br. (Doc. 8) at 16.) Instead, Defendants focus their challenge on the causation prong.

Proving causation at the pleading stage is "not an onerous burden," and retaliation plaintiffs "do not have to show at the prima facie stage that their protected activities were but-for causes of the adverse action." Strothers v. City of Laurel, 895 F.3d 317, 335 (4th Cir. 2018).[12] Still, plaintiffs must allege facts plausibly supporting an inference of causation, a task that may be accomplished by alleging facts that show the

_____

[12] Defendants are incorrect that Plaintiff must show but-for causation at this stage in the proceedings. If a plaintiff's complaint survives to the pretext stage in the McDonnell Douglas framework, it is at that point that they must prove but-for causation. Strothers, 895 F.3d at 335 (citing Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 251 (4th Cir. 2015), and noting that a "plaintiff need not establish but-for causation until pretext stage of burden-shifting framework"); see also Perkins v. Int'l Paper Co., 936 F.3d 196, 214 (4th Cir. 2019).

employer took an adverse action "soon _after_ becoming aware" of protected activity. Id. at 336 (emphasis added); see also Villa v. CavaMezze Grill, LLC, 858 F.3d 896, 899, 901 (4th Cir. 2017) (discussing importance of an employer's subjective knowledge since an adverse action must be motivated by a desire to retaliate in order to be actionable); Carter, 33 F.3d at 460 (dealing with termination following notice employee filed EEOC charge); Welton v. Durham Cty., No. 1:17-CV-258, 2018 WL 4656242, at *3 (M.D.N.C. Sept. 27, 2018), aff'd, No. 18-2340, 2019 WL 4051959 (4th Cir. Aug. 28, 2019) (discussing Strothers, 895 F.3d at 335–36). For these reasons, discriminatory conduct that continues unchanged after protected activity cannot support an inference of retaliatory motivation without some further factual allegations. Hamilton v. Prince George's Cty., Civil Action No. DKC 17-2300, 2019 WL 4735429, at *5 (D. Md. Sept. 27, 2019) ("[E]ven assuming that harassment sufficient to constitute an adverse employment action occurred, Plaintiff has by no means shown that the continuation of Sgt. Manley's harassment after her complaints was causally linked to the complaints themselves."); see also O'Connor v. Cameron, No. CV DKC 17-3394, 2019 WL 1112281, at *6 (D. Md. Mar. 11, 2019) (finding that a causal connection exists when "the employer [took] the adverse employment action _because_ the plaintiff engaged in a protected activity" (emphasis added) (quoting Dowe v. Total Action Against

Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998));

Blackburn v. Commonwealth of Va. Dep't of Corr., No.

1:01CV00039, 2002 WL 242352, at *4 (W.D. Va. Feb. 19, 2002)

(noting that evidence that a plaintiff's superiors "treated her

differently soon after the complaint was made" was sufficient to

survive a motion for summary judgment) (emphasis added).

If a plaintiff is proving causation by temporal proximity alone,

the adverse action must be "very close" to the protected

activity. Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74

(2001) (per curiam). Gaps of three or four months between

protected activity and an adverse action have been found

insufficient to support an inference of causation in other

cases. See id. (citing, with approval, cases where courts found

periods of three and four months too long); King v. Rumsfeld,

328 F.3d 145, 151 n.5 (4th Cir. 2003) (finding that two-and-a-

half months probably too long a lapse in time, barring other

circumstances that explain the gap). Closer to this case, the

Fourth Circuit has found a lapse of thirteen months too long to

establish causation. Causey v. Balog, 162 F.3d 795, 803 (4th

Cir. 1998) ("A thirteen month interval between the charge and

termination is too long to establish causation absent other

evidence of retaliation."). If too long a period of time passes

between the protected activity and the retaliatory conduct,

"courts may look to the intervening period for other evidence of

retaliatory animus." <u>Lettieri v. Equant Inc.</u>, 478 F.3d 640, 650
(4th Cir. 2007).

In the present case, more than sixteen months passed
between the time Plaintiff filed her complaint with HR and the
date upon which Defendants opened their investigation, the first
employment action coming close to "materially adverse."[13] (Compl.
(Doc. 1) ¶¶ 24, 31.) Sixteen months is too long a period to
support an inference of causation without some other facts. <u>See</u>
<u>Causey</u>, 162 F.3d at 803; <u>see also</u> <u>Hinds v. Sprint/United Mgmt.</u>
<u>Co.</u>, 523 F.3d 1187, 1204 (10th Cir. 2008) (11-month gap too
long); <u>Vasquez v. Cty. of L.A.</u>, 349 F.3d 634, 647 (9th Cir.
2003) (13-month gap too long); <u>Bishop v. Bell Atl. Corp.</u>, 299
F.3d 53, 60 (1st Cir. 2002) (12-month gap too long). Since
Plaintiff cannot prove causation by temporal proximity alone,
she must allege some conduct that can serve as "evidence of
retaliatory animus" in the period between her HR complaint and
the September 2017 investigation.

Plaintiff alleges that Solomon "seemed particularly angry
with [her] after her grievance and began excluding her from

---

[13] <u>See</u> <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S.
53, 68 (2006) ("In our view, a plaintiff must show that a
reasonable employee would have found the challenged action
materially adverse, which in this context means it well might
have dissuaded a reasonable worker from making or supporting a
charge of discrimination." (internal quotations and citations
omitted)).

emails and meetings that were necessary for her job." (Compl. (Doc. 1) ¶ 27.) Plaintiff also alleges that she was denied training opportunities. (Id. ¶ 19.) Plaintiff does not specify when these alleged acts took place, as similar conduct appear to have occurred throughout Plaintiff's association with Solomon.

Despite the allegation that Solomon "began" taking retaliatory action soon after the HR complaint, most of his conduct[14] was actually an unchanged continuation of his conduct prior to the HR complaint. Prior to Plaintiff's HR complaint,

---

[14] Plaintiff does argue that the 2016 promotion denial was also a retaliatory act that provides circumstantial evidence of retaliatory animus in the interim. (Pl.'s Resp. (Doc. 14) at 22.) There are several problems with this claim. First, Plaintiff does not allege a date for when she was denied the position or when Solomon first expressed anger towards her; the court cannot conclude that Solomon knew about the protected activity at the time he made a hiring decision. Second, even if failing to promote in 2016 was retaliatory, it does not adequately bridge the gap between the protected activity in April/May 2016 and the retaliatory acts, Defendants' 2017 investigation of Plaintiff and her termination. Plaintiff does not allege a date when she was denied the 2016 position, but she does allege she applied after her HR complaint. (Compl. (Doc. 1) ¶¶ 24, 25.) As stated above, even three or four months can be too long. It is unlikely Defendants waited until April 2017 to make a hiring decision about the May 2016 posting. Third, one act of retaliatory conduct is very different from the patterns that other courts have relied upon when finding a causal link over a long period of time. See, e.g., Lettieri, 478 F.3d at 650-51 (noting that a seven-month gap between protected activity and retaliatory act was filled with retaliatory behavior, including stripping plaintiff of supervisory responsibilities); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997) (finding that a two-year gap between protected activity and retaliatory act was linked by a "pattern of antagonism").

Solomon excluded "Pouncey and the other African-American employee from projects, team meetings, and communications." (Id. ¶ 17.) The white employees also received training while the African American employee's requests for training were denied. (Id. ¶ 19.) Finally, before Plaintiff filed her HR complaint, Solomon allegedly spoke to African American employees in a disrespectful tone that he did not use with white employees. (Id. ¶ 18.) Solomon was allegedly upset with Plaintiff for complaining to HR, but Plaintiff does not allege that Solomon's conduct changed in kind or frequency.

In short, Plaintiff alleges conduct that occurred <u>before</u> the HR complaint was filed and continued, unchanged, after her filing. Conduct occurring before a complaint is filed cannot be motivated by retaliatory animus. <u>Strothers</u>, 895 F.3d at 335; <u>see also</u> <u>Marra v. Philadelphia Hous. Auth.</u>, 497 F.3d 286, 302 (3d Cir. 2007), <u>as amended</u> (Aug. 28, 2007) (noting that exclusion from an important meeting, along with other acts, suggestive of retaliatory animus when conduct occurred <u>after</u> supervisor was informed of protected activity); <u>Hunt-Golliday v. Metro. Water Reclamation Dist. Of Greater Chicago</u>, 104 F.3d 1004, 1014 (7th Cir. 1997) (noting that a "pattern of criticism and animosity" by plaintiff's supervisors that began almost immediately <u>after</u> her protected activity could serve as evidence of animus in the interim). When a plaintiff alleges that conduct occurring prior

to plaintiff's protected activity continued unchanged, and provides no other facts supporting an inference of retaliatory intent in ongoing acts, there can be no reasonable inference of retaliatory motive. See Hamilton, 2019 WL 4735429, at *5. Though it is conceivable that Solomon was motivated by a retaliatory animus following Plaintiff's HR complaint, she has not alleged facts that raise that conclusion "above the speculative level." Twombly, 550 U.S. at 555.

Finally, even if the court were to infer retaliatory animus in Solomon's continuing conduct, Plaintiff does not allege when these acts occurred. Without any dates or range of dates, this court is unable to conclude if this conduct continued up until or shortly before her termination. If the conduct stopped after a few months, then there would still be a significant gap in time between Solomon's last retaliatory act evincing animus and Plaintiff's termination.

For these reasons, the court finds that Plaintiff's claims for retaliation (Claims Three, Four, Seven, and Eight) should be dismissed for failing to state a claim. Plaintiff's retaliation claims should be dismissed as to all Defendants since Plaintiff fails to plausibly allege a claim for retaliation.

**IV.  CONCLUSION**

For the reasons set forth herein,

**IT IS HEREBY ORDERED** that Plaintiff's Objections to Defendants' Reply, (Doc. 16), is **SUSTAINED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss, (Doc. 7), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is **GRANTED IN PART AND DENIED IN PART.** The motion is **GRANTED** as to all Defendants as to Claims Three (Title VII Retaliation), Four (Section 1981 Retaliation), Seven (Title VII Retaliation), and Eight (Section 1981 Retaliation). The motion is **DENIED** as to Defendant Guilford County as to Claims One (Title VII Failure-to-Promote), Two (Section 1981 Failure-to-Promote), Five (Title VII Wrongful Termination), and Six (Section 1981 Wrongful Termination). The motion is **GRANTED** as to Defendants Marty Lawing, Hemant Desai, and Jeffrey Solomon as to Claims One (Title VII Failure-to-Promote) and Five (Title VII Wrongful Termination) and **DENIED WITHOUT PREJUDICE** as to Claims Two (Section 1981 Failure-to-Promote) and Six (Section 1981 Wrongful Termination).

This the 17th day of March, 2020.

_William L. Osteen, Jr._
United States District Judge