IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:18-cv-1022

| | |
|---|---|
| MONICA POUNCEY,<br><br>                Plaintiff,<br><br>v.<br><br>GUILFORD COUNTY, MARTY LAWING, in his official and individual capacities, HEMANT DESAI, in his official and individual capacities, and JEFFREY SOLOMON, in his official and individual capacities.<br><br>                Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

NOW COME Defendants Guilford County (the "County"); Marty Lawing ("Mr. Lawing"); Hemant Desai ("Mr. Desai"); and Jeffrey Solomon ("Mr. Solomon") (collectively "Defendants") and file this Memorandum in Support of their Motion for Summary Judgment.

## NATURE OF THE MATTER

Plaintiff Monica Pouncey is a former Software Engineer who was employed in the County's Information Services (IS) Department. She was terminated on October 18, 2017 for unauthorized access to the email accounts of the Chief Information Officer (Mr. Desai), her co-workers, and a member of the County's Human Resources Department (Graham Rothrock) who was the recruiter responsible for filling a Senior Software Engineer position for which Plaintiff had applied.

Shortly after applying for the Senior Software Engineer position on June 29, 2017, Plaintiff gave herself unauthorized and unrestricted access to Mr. Desai's email account. Then for the two-week period of July 3, 2017 through July 17, 2017, Plaintiff had unrestricted access to the email account of Mr. Rothrock, the HR Recruiter.

Following a thorough investigation, Plaintiff was discharged for unacceptable conduct based, in part, on the following:

> "Thus, you gave yourself access to Mr. Desai and Mr. Rothrock's mailboxes at the same time as the job posting, thus gaining access to any information concerning the position, such as Interview Questions that may be sent to Mr. Rothrock as part of the normal process. The act of gaining unauthorized access to these mailboxes for your personal gain is an ethical violation."

(Desai Aff. ¶ 29; Ex. I.)[1]

After Plaintiff appealed her termination, an independent investigation was conducted by the Deputy County Manager, Clarence Grier. Mr. Grier reviewed relevant information and materials, conducted interviews, and recommended that Plaintiff's appeal be denied. Importantly, Mr. Grier concluded that:

> "Ms. Pouncey misused her position and the power of her position for unethical practices which on several occasions displayed a lack of integrity. Additionally, and just as important, several of her statements in her interview and interviews with others about these incidents were not credible and misleading."

(Grier Aff. ¶¶ 15-16; Ex. L.)

---

[1] All Exhibits ("Ex."), Witness Affidavits ("Aff.") and Plaintiff's Deposition Transcript ("Pouncey Dep.") are attached to Defendant's Motion for Summary Judgment. All citations in this Memorandum correspond to the affixed attachments.

2

County Manager Mr. Lawing accepted Mr. Grier's recommendation, denied Plaintiff's appeal, and upheld her termination on November 20, 2017.

Following her termination, the County discovered that Plaintiff had committed other egregious violations of ethical standards. Without prior authorization and without knowledge by anyone in leadership roles in the IS Department, Plaintiff gave herself **_unrestricted_** access to the email accounts of a wide range of County employees, including the elected members of the County Commission, the Sheriff of Guilford County, the County Manager, and members of the Guilford County legal department, including the County Attorney. In addition, Plaintiff had software programs on her computer she was not authorized to use.

The claims remaining in this lawsuit are limited to claims of race discrimination for (i) Plaintiff's termination on October 18, 2017 and (ii) a failure to promote Plaintiff to the position of Senior Software Engineer, which was filled after her termination in December 2017. The claims against Guilford County are pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981, while the claims against the Individual Defendants in their personal capacity are pursuant to § 1981 only. All other claims were dismissed by this Court on March 17, 2020. (D.E. 17.)

Defendants now move for summary judgment with regard to Plaintiff's remaining claims of race discrimination concerning her termination and failure to promote. Defendants also seek summary judgment with regard to its Fourteenth Affirmative Defense, which asserts that evidence of Plaintiff's additional misconduct, although

3

discovered after Plaintiff's termination, bars Plaintiff in whole or in part from equitable relief. (D.E. 25.) Finally, the Individual Defendants seek summary judgment with regard to its Tenth Affirmative Defense, which asserts that their good faith belief that Plaintiff violated ethical standards entitles them to qualified immunity and negates any evidentiary basis for a finding of invidious discriminatory intent required to impose personal liability against public officials under § 1981. (D.E. 25.)

## STATEMENT OF THE FACTS

Defendant Marty Lawing is the County Manager. His role in this lawsuit is limited to his November 20, 2017 denial of Plaintiff's appeal of her termination, a decision which was based solely on a report issued by Deputy County Manager, Clarence Grier.

Defendant Hemant Desai is the County's Chief Information Officer. He has overall responsibility for the IS Department. He was involved in the investigation that led to Plaintiff's termination; and he was also involved in the decision to terminate Plaintiff.

Defendant Jeffrey Solomon is the Enterprise Team Supervisor. He was Plaintiff's immediate supervisor. He was involved in the investigation that led to Plaintiff's termination; and he was also involved in the decision to terminate Plaintiff.

Ernest "Ray" Willis is the County Human Resources Manager. He was involved in the investigation and decision to terminate Plaintiff.

Clarence Grier is the Deputy County Manager. He conducted an independent investigation of Plaintiff's termination and recommended to the County Manager that Plaintiff's appeal be denied.

4

Plaintiff, an African American female, worked as an Email Administrator within the IS Department, under the supervision of Mr. Solomon. (Pouncey Dep. p. 19, 88.) Plaintiff was responsible for providing email support and assistance to County employees through handling email retrievals and mailbox access requests, in addition to providing diagnostic and technical support. In her role, upon written request, permission, or with prior approval, Plaintiff could access email accounts of co-workers and other County employees for job-related purposes. (Desai Aff. ¶¶ 35-36; Wilson Aff. ¶¶ 26-28.)

## A. The Events of September 21-22, 2017

On September 21, 2017, Mr. Solomon discovered Plaintiff had unrestricted access to the email accounts of two of her co-workers, Bretton Pennington ("Mr. Pennington") and Teresa Wilson ("Ms. Wilson"). (Solomon Aff. ¶ 15; Wilson Aff. ¶ 22-23.) Plaintiff's unrestricted access allowed her to see all of these employees' emails without their knowledge. (*Id.*) Mr. Solomon confirmed that Ms. Wilson nor Mr. Pennington were aware of or gave authorization for Plaintiff to access their accounts. (Wilson Aff. ¶¶ 22, 25; Pennington Aff. ¶ 14.) Mr. Solomon removed Plaintiff's access. (Solomon Aff. ¶ 15.)

The next day, Friday, September 22, 2017, is a pivotal date in this lawsuit. It started with Plaintiff's unfounded accusation that her supervisor (Mr. Solomon) gave a co-worker (Mr. Pennington) access to her email account without her permission; and it ended with the discovery of Plaintiff's own misconduct in obtaining unauthorized access to the email accounts of other County employees.

5

Following a routine staff meeting on September 22, 2017, Plaintiff confronted Mr. Solomon and Mr. Pennington, accusing Mr. Solomon of giving Mr. Pennington access to her email account. (Pouncey Dep. p. 33-34) Mr. Solomon and Mr. Pennington both denied Plaintiff's allegations. (Solomon Aff. ¶ 16; Pennington Aff. ¶12.)

Angry and visibly upset about being the (wrongfully perceived) victim of a co-worker having access to her email account without her knowledge, Plaintiff immediately went to Mr. Desai's office. (Desai Aff. ¶ 14.) She insisted she had "proof" that Mr. Solomon had given Mr. Pennington access to her email account, and demanded something be done. (*Id*.; Pouncey Dep. p. 36-37.) Although she had closed the door upon entering Mr. Desai's office, Plaintiff was angry, emotional, and talking loud enough for co-workers down the hallway to hear the commotion. (Solomon Aff. ¶ 17.)

Mr. Desai informed Mr. Solomon of Plaintiff's allegations and instructed him and Plaintiff to get together to deal with the issue. (Desai Aff. ¶ 14.) Mr. Desai asked Plaintiff to provide the proof she relied on. (*Id*. at ¶ 15; Ex. A.)

Shortly thereafter, Plaintiff admitted that she had misread the report. (Pouncey Dep. p. 37.) The report Plaintiff relied on actually showed that Mr. Solomon had *removed* Plaintiff's access to Mr. Pennington and Ms. Wilson's email accounts. (Pouncey Dep. p. 37-38.) Plaintiff sent an email to Mr. Desai and Mr. Solomon, acknowledging her "error" and apologizing. (*Id*.; Solomon Aff. ¶ 21; Desai Aff. ¶ 16; Ex. A.)

Shortly after her email apology, Plaintiff met with Mr. Solomon. At her request, Mr. Solomon demonstrated how he removed Plaintiff's access to the email accounts of Mr.

6

Pennington and Ms. Wilson. (Solomon Aff. ¶ 23; Pouncey Dep. p. 44.) Mr. Solomon reminded Plaintiff she did not have authorization to access Mr. Pennington or Ms. Wilson's email accounts and not to access email accounts again without prior authorization from him or Mr. Desai. (Solomon Aff. ¶¶ 22-23.) By her own admission, Plaintiff knew that she had to obtain permission to access a coworkers' email account within the department. (Pouncey Dep. p. 33-34.)

Later that afternoon, Mr. Solomon discovered that Plaintiff had regained access to Mr. Pennington's email account. (Solomon Aff. ¶ 24.) Mr. Solomon again removed Plaintiff's access to the email accounts and an investigation was initiated for her unauthorized access and insubordination. (*Id.*)

## B. Plaintiff's Unauthorized Access of Leadership Accounts for Personal Gain

Plaintiff's actions on September 21, 2017 prompted Mr. Solomon to conduct an audit of Plaintiff's access permissions. (*Id.* ¶ 25.) He discovered that Plaintiff had granted herself unrestricted access to the email accounts of Mr. Desai, Chief Information Officer, and Graham Rothrock, a Recruiter for the HR Department, among others. (*Id.* ¶ 26; Ex. C.)

Mr. Rothrock was the person in the HR Department responsible for recruiting for the Senior Software Engineer position. (Rothrock Aff. ¶ 4.) On June 29, 2017, within minutes of being notified of the job posting, Plaintiff applied for the Senior Software Engineer position. (Pouncey Dep. p. 58-59; Desai Aff. ¶ 24; Ex. F.) Later that day, Plaintiff granted herself unrestricted access to Mr. Desai's email account without his

7

knowledge or permission. (Desai Aff. ¶ 23; Ex. C.) The following Monday, July 3, 2017, Plaintiff granted herself access to Mr. Rothrock's email account, and she continued to have unrestricted access to Mr. Rothrock's account for two full weeks. (Pouncey Dep. p. 60; Ex. C.)

The timing of Plaintiff's access to Mr. Desai and Mr. Rothrock's email accounts was particularly alarming because the hiring manager and the HR department will frequently correspond via email about the screening criteria and questions used for conducting panel interviews of candidates for open jobs. (Rothrock Aff. ¶ 12; Desai Aff. ¶ 25.)

Mr. Solomon shared the information he uncovered with Mr. Desai, who in turn, informed Mr. Willis (African American), HR Manager. (Solomon Aff. ¶ 25; Desai Aff. ¶ 21.) Mr. Desai and Mr. Willis jointly decided that Plaintiff should be suspended pending an investigation. (Desai Aff. ¶ 28; Willis Aff. ¶¶ 22-23.)

### C. Plaintiff is Placed on Administrative Leave

On September 28, 2017, Plaintiff was summoned to the HR Department for a meeting with Mr. Desai, Mr. Willis, and June Harley, HR Manager (Caucasian). (Pouncey Dep. p. 20-21; Willis Aff. ¶ 18.)

Mr. Desai asked Plaintiff how she selected which employee accounts to access; and specifically why had she chosen his account along with Mr. Rothrock. (Desai Aff. ¶ 32.) Plaintiff offered no rationale other than she did not feel it was necessary to get explicit permission to access any email account as she was assisting with the Barracuda and MDM

8

projects. (Pouncey Dep. p. 48-50.) Mr. Desai explicitly told Plaintiff that accessing employee email accounts should only be done when there is a formal request from individuals with appropriate authority. (*Id*. at p. 50.) Notably, Plaintiff could not explain why Mr. Rothrock was the only employee in the HR Department whose email account she accessed. (Desai Aff. ¶ 32.)

Based on her admissions, Plaintiff was placed on administrative leave without pay for possible disciplinary action due to unacceptable personal conduct pursuant to Guilford County Personnel Regulation 29. (Desai Aff. ¶ 28; Ex. G, Ex. R.)

### D. Investigation Confirms Plaintiff's Pattern of Unethical Behavior

The investigation revealed a pattern of unethical behavior by Plaintiff, and evidence that contradicted statements made by Plaintiff in the September 28, 2017 meeting.

Plaintiff claimed she accessed employee email accounts, including those of Mr. Desai and Mr. Rothrock, as a part of the MDM and Barracuda projects. (Pouncey Dep. p. 48.) However, Plaintiff was not a part of the MDM project team; and even if Plaintiff had provided assistance to the team, the project was completed in January and April 2017, several months prior to the unauthorized access that occurred in June-July 2017. (Ex. I.) Similarly, while Plaintiff was part of the Barracuda project team, the Barracuda project closed in 2016, a year prior to the Plaintiff's June-July 2017 unauthorized access. (Ex. I.) Further, Plaintiff's claims of assistance with Microsoft issues did not warrant full access to Ms. Wilson and Mr. Pennington's accounts. (Desai Aff. ¶ 31; Wilson Aff. ¶¶ 30-31; Ex. B.)

Mr. Rothrock confirmed that he had not submitted any request for technical support to the IS Department between July 3 and July 17, 2017; he had not given Plaintiff permission to access his email account; and he was unaware that she had access to his account. (Rothrock Aff. ¶¶ 9, 11.)

In summary, the County concluded that Plaintiff's access to the email accounts of Brett Pennington and Teresa Wilson were without authorization and contrary to existing protocols; and that Plaintiff's access of Mr. Rothrock and Mr. Desai's email accounts were for personal gain relating to her application for the position of Senior Software Engineer. (Desai Aff. ¶¶ 30, 33; Willis Aff. ¶ 27; Ex. S.)

### E.    Plaintiff's Termination and Appeal

The decision to terminate Plaintiff was a joint decision of Mr. Solomon (her immediate supervisor) and Mr. Desai (the Chief Information Officer), which was reviewed and approved by Mr. Willis (HR Manager). (Desai Aff. ¶ 29; Willis Aff. ¶ 18.)

On October 18, 2017, Mr. Desai and Mr. Willis met with Plaintiff and terminated her employment based on her insubordination and unacceptable personal conduct. (Desai Aff. ¶ 29; Ex. I.) Plaintiff received a copy of the Adverse Employment Action Notice including applicable policies and documentation. (Pouncey Dep. p. 111.)

On October 26, 2017, in accordance with County policy, Plaintiff appealed her termination. (Ex. K.) Appeals are handled by Mr. Grier, the Deputy County Manager (African American). (Grier Aff. ¶ 5.) Mr. Grier conducted an independent investigation

10

which included a review of all relevant documentation and employee interviews including Plaintiff and Mr. Rothrock. (*Id*. ¶¶ 7-10.)

On November 10, 2017, Mr. Grier completed his investigation of Plaintiff's appeal, and for reasons stated in his report, he recommended Plaintiff's appeal be denied and that her termination be upheld. (*Id*. ¶ 16; Ex. L.)

On November 20, 2017, Mr. Lawing made the decision to accept Mr. Grier's recommendation and upheld Plaintiff's termination. (Lawing Aff. ¶ 9.) Pointedly, Mr. Lawing concluded:

> "Plaintiff's insubordination, display of poor judgment and lack of integrity, accessing accounts for employees involved in the hiring process for the position she applied to, and providing false information during the investigation, was unacceptable personal conduct in violation of County policy.

(*Id*., Ex. M.)

### F. Plaintiff's Replacement was African American

Plaintiff was replaced by Ian Lambeth who was hired as a new Software Engineer on March 19, 2018. Mr. Lambeth self-reported that his ethnic background and race as Native American and African American, non-Hispanic. (Solomon Aff. ¶ 47.)

### G. Post Termination Evidence of Further Wrongdoing

Following Plaintiff's termination, the County discovered Plaintiff had engaged in additional misconduct. (D.E. 25.) It was discovered that Plaintiff had granted herself unrestricted access to the email accounts of several individuals including elected members of the County Commission, the Sheriff of Guilford County, and members of the County

legal department, including the County Attorney. (Desai Aff. ¶ 44; Ex. J.) Neither Plaintiff's supervisor, Mr. Solomon, nor the Chief Information Officer, Mr. Desai, were aware of or approved of Plaintiff's unrestricted access to these accounts and access to high level officials requires prior authorization. (Solomon Aff. ¶¶ 38-40; Desai Aff. ¶ 45.) In addition, the County discovered Plaintiff had downloaded software programs which she was not authorized to use, in direct violation of County policy. (Solomon Aff. ¶ 44, Ex. Q.)

## H.     Plaintiff's Claims Against the Individual Defendants

Mr. Lawing's role in this matter is limited to his denial of Plaintiff's termination appeal, which was based solely on the independent investigation and written recommendation of Mr. Grier, an African American male. (Lawing Aff. ¶ 6.) Moreover, Plaintiff admits that she has never met, communicated or interacted with Mr. Lawing at any time during her employment, and that Mr. Lawing has never made any racial slurs or used racially derogatory language. (*Id*. at ¶ 11; Pouncey Dep. p. 29.)

With regard to Mr. Desai (aside from his role in the termination of Plaintiff's employment), Plaintiff's only complaint concerns a team conference call in 2015-2016. (Pouncey Dep. p. 68.) On the call, Mr. Desai described Plaintiff as being "unprepared" based on her inability to answer a question. (*Id.*) This one-time isolated statement is the only instance of alleged mistreatment by Mr. Desai. (*Id.*) Plaintiff further admits that Mr. Desai never used any racially derogatory language or racial slurs. (*Id*. at p. 68-69.) Plaintiff

admits, however, that she was aware that Mr. Desai did not have confidence in her abilities as a Software Engineer. (*Id*. at p. 70-71.)

With regard to the allegations against Mr. Solomon (aside from his role in Plaintiff's termination), Plaintiff admits that Mr. Solomon never made any racial comments or remarks. (*Id*. at p. 86-87.) Nevertheless, Plaintiff's complaints about Solomon involve several matters that are insufficient to raise an inference of racial bias, whether considered in isolation or combined.

First, Plaintiff claims Mr. Solomon scored her lower then she thought she deserved on annual performance evaluations. (*Id*. at p. 89-90). The undisputed facts establish, however, that Mr. Solomon rated Plaintiff as a "good" performer who meet all relevant standards on her 2016 evaluation. (*Id.* at p. 91-92.)

Second, Plaintiff complains that Mr. Solomon made African American employees complete their lunch break before 2:00 pm. (*Id*. at p. 93-94.) It is undisputed, however, that all County employees are supposed to take their lunch break between 11:00 am and 2:00 pm. (Solomon Aff. ¶ 5.) Because Plaintiff and some of her co-workers were going beyond 2:00 pm, Mr. Solomon reminded Plaintiff that she (and her co-workers) must finish their lunch break and be back to work by 2:00 pm. (*Id*.) While Plaintiff attributes racial motives to Mr. Solomon for enforcing this policy, she admits that it was Mr. Desai who implemented the new lunch guidelines. (Pouncey Dep. p. 94, 96-97.) Furthermore, Plaintiff has proffered no evidence that similarly-situated employees in the IS Department of a different race were not held to the same lunch break standards.

13

Finally, Plaintiff claims Mr. Solomon denied her requests for training causing her to receive less training than Caucasian employees. (*Id*. at p. 73-74.) Specifically, Plaintiff deemed it "racism" for her not to be offered training or opportunities, in the same amount and frequency as two newer Caucasian employees, Mr. Pennington and Ms. Wilson. (*Id*. at p. 81.) The IS Department has a limited training budget and training is prioritized for new employees without system knowledge and employees with out-of-date knowledge of a particular system. (Solomon Aff. ¶¶ 9-11; Desai Aff. ¶¶ 10-11.) More importantly, the undisputed facts demonstrate that Plaintiff received more training than several White employees, including Mr. Pennington and Ms. Wilson. (Solomon Aff. ¶ 10; Ex. V.)

## ARGUMENT

While Plaintiff's claims of race discrimination with regard to her termination and failure to promote arise from the same core facts, the legal standards for liability against the County and the Individual Defendants under Title VII and § 1981 are very different.

First, since Plaintiff has no direct evidence of racial bias, Plaintiff's Title VII claims against the County are analyzed under the familiar *McDonnell Douglas* burden shifting framework: (i) Plaintiff must establish a *prima facie* case of discrimination; (ii) the employer must produce evidence of a legitimate non-discriminatory reason for its actions; and (iii) once the employer presents a legitimate non-discriminatory reason, Plaintiff must show that the proffered reason was mere pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at

14

all times with the plaintiff." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507 (1993) (internal citation omitted).

Second, Plaintiff's claims against the County under § 1981 are subject to a more rigorous legal standard for liability, because 42 U.S.C. § 1983 is the "exclusive remedy" for a violation by state or local government entities of constitutional rights guaranteed by § 1981. *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701 (1989). Thus, Plaintiff must show "an official policy or custom" of discrimination, attributable to the County, led to the deprivation of her rights. *Id.* at 736-37.

Third, the Individual Defendants are entitled to qualified immunity for the claims asserted against them in their personal capacity under § 1981. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The undisputed evidence establishes that each Individual Defendant had an objective basis for a good faith belief that Plaintiff engaged in misconduct that justified her termination. This good faith belief entitles them to qualified immunity and negates any basis for a finding of intentional discrimination under § 1981.

I.  **THE COUNTY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TITLE VII DISCHARGE CLAIM.**

To establish a *prima facie* case of race discrimination, Plaintiff must show that: "(1) she is a member of a protected class; (2) she suffered some adverse employment action; (3) at the time of the adverse employment action, she was performing at a level that met her employer's legitimate expectations; and (4) the adverse employment action occurred under circumstances that raised an inference of unlawful discrimination." *McKiver v. Gen. Elec. Co.*, 11 F. Supp. 2d 755, 758 (M.D.N.C. 1997) (internal citation omitted).

15

Plaintiff cannot establish a *prima facie* case of race discrimination because (i) she was not meeting the County's legitimate job expectations and (ii) she cannot prove her termination occurred under circumstances that raise an inference of discrimination.

## A.       Plaintiff Was Not Meeting the County's Legitimate Expectations.

To establish she was meeting legitimate job expectations, Plaintiff must prove "that she was doing her job well enough to rule out the possibility that she was fired for inadequate job performance, absolute or relative." *Cox v. Lowe's Home Centers, LLC*, No. 314CV00679MOCDCK, 2015 WL 7288689, at *4 (W.D.N.C. Nov. 17, 2015), *aff'd,* 667 F. App'x 405 (4th Cir. 2016). Legitimate expectations are based on the employer's perception, and when an "employee is aware of an employer's policy and violates it …" legitimate expectations are not met. *Jones v. Dole Food Co.*, 827 F. Supp. 2d 532, 547 (W.D.N.C. 2011), *aff'd,* 473 F. App'x 270 (4th Cir. 2012) (internal citation omitted); *Anderson v. Duke Energy Corp.*, No. CIV. 3:06CV399, 2008 WL 4596238, at *11 (W.D.N.C. Oct. 14, 2008), *aff'd,* 328 F. App'x 176 (4th Cir. 2009) (finding the employee did not meet legitimate expectations when she falsified timesheets and lied to her supervisor).

In a case such as this, where the Plaintiff is discharged for violating policy, evidence of her misconduct serves a dual purpose: it establishes the County's legitimate non-discriminatory reason for Plaintiff's termination; and it prevents Plaintiff from establishing that she was meeting the County's legitimate job expectations, a critical element of her *prima facie* case.

16

Plaintiff's *prima facie* case is undone by her own actions on September 22, 2017. Convinced that her supervisor (Mr. Solomon) had given her co-worker (Mr. Pennington) access to her email account without her knowledge or permission, she was insistent she had "proof" of wrongdoing by Mr. Solomon and Mr. Pennington and demanded action by Mr. Desai. (Desai Aff. ¶ 14.) Thus, her very own complaint about Mr. Solomon and Mr. Pennington confirmed that the established norm is to obtain prior approval before accessing the email accounts of co-workers. (Pouncey Dep. p. 34.) Further, she admitted she had accessed the email accounts of Mr. Desai, Mr. Rothrock, and Mr. Pennington without their permission or approval. (*Id*. at p. 53.) In summary, Plaintiff's admitted violations of established policy prevent her from proving she was meeting the legitimate expectations of the County.

**B.      The Circumstances of Plaintiff's Termination Do Not Give Rise to an Inference of Discrimination.**

In a discharge case, an inference of unlawful discrimination can be shown if: (i) the plaintiff's position was filled by a similarly qualified applicant outside the protected class, *Lloyd v. New Hanover Reg'l Med. Ctr.*, No. 7:06-CV-130-D, 2009 WL 890470, at *9 (E.D.N.C. Mar. 31, 2009), *aff'd,* 405 F. App'x 703 (4th Cir. 2010) or (ii) a similarly situated employee outside of the protected class received more favorable treatment. *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 719 (4th Cir. 2013).

Plaintiff proffers no evidence that her position was filled by someone of a different race. In fact, the record evidence forecloses this option, because Plaintiff was replaced by Ian Lambeth who was hired on March 19, 2018. Mr. Lambeth self-reported his ethnic

17

background and race as African American and Native American, non-Hispanic. (Solomon Aff. ¶ 47.) Similarly, Plaintiff proffers no evidence that a co-worker (of a different race) engaged in the same conduct but received more favorable treatment.

The undisputed evidence concerning the circumstances of Plaintiff's termination negate any inference of racial bias. Her suspension and termination complied with the County's procedural protocols, and Mr. Willis (African American), the County Human Resources Manager, reviewed and approved her suspension and termination. (Ex. R.) Her appeal was investigated independently by the Deputy County Manager, Clarence Grier (African American), who concluded that Plaintiff's explanations to him were not credible and that her appeal should be denied and her termination upheld. (Grier Aff. ¶¶ 2, 15-16.)

## C. Plaintiff was Terminated for a Legitimate Non-Discriminatory Reason.

The undisputed evidence demonstrates that Plaintiff was terminated for legitimate non-discriminatory reasons, all of which are fully documented in the Adverse Employment Action Notice issued to Plaintiff on October 18, 2017 (Ex. I); the investigation report issued by Deputy County Manager Mr. Grier dated November 10, 2017 (Grier Aff. ¶ 7, Ex. L); and the denial of appeal notice issued by Mr. Lawing on November 20, 2017. (Lawing Aff. ¶ 6, Ex. M.)

## D. Plaintiff Cannot Prove Pretext.

In order to prove pretext, Plaintiff must present specific evidence that the reasons given for her termination are false or "unworthy of credence" or offer "other forms of circumstantial evidence sufficiently probative" of unlawful discrimination. *Mereish v.*

*Walker*, 359 F.3d 330 (4th Cir. 2004). Further, a plaintiff may not "simply show the articulated reason is false; he must also show that the employer discriminated against him on the basis of [race]." *Laber v. Harvey*, 438 F.3d 404, 430–31 (4th Cir. 2006).

The record evidence cannot support a claim that the reason for her termination is false or unworthy of credence. Plaintiff admits that she accessed employee email accounts without permission or authorization, including the account belonging to Mr. Rothrock at a time when he was actively involved in recruiting for the Senior Software Engineer position for which Plaintiff applied. (Pouncey Dep. p. 48, 60.) Plaintiff admits that there was a department policy requiring permission prior to accessing any co-workers account. (*Id*. at p. 34.) The County conducted investigations prior to her termination and during her appeal, and Plaintiff admits that she was interviewed and provided a statement during that process. (*Id*. at p. 26, 64.) Plaintiff does not dispute that she was informed of the reason for her termination. (*Id*. at p. 24, 111.) In summary, Plaintiff does not have credible evidence that the reasons stated for her termination are a mere pretext for discrimination.

## II. THE COUNTY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TITLE VII PROMOTION CLAIM.

In order to establish a *prima facie* case of failure to promote, Plaintiff must prove (i) that she is a member of a protected class, (ii) that her employer had an open position for which she applied, (iii) she was qualified for the position, and (iv) that she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Cherry v. Elizabeth City State Univ.*, 147 F. Supp. 3d 414, 423 (E.D.N.C. 2015) (internal citation omitted).

19

Mr. Pennington was awarded the position of Senior Software Engineer in December 2017, almost two months after Plaintiff was terminated. (Pennington Aff. ¶ 3; Rothrock Aff. ¶ 13.) Because Plaintiff had already been terminated for misconduct, she was not "qualified" for the job opening and she was not rejected for the promotion under circumstances that give rise to an inference of race discrimination. In short, Plaintiff cannot establish a *prima facie* case of race discrimination for failure to promote her to the position of Senior Software Engineer.

Furthermore, assuming *arguendo* that Plaintiff could make a *prima facie* case, she must present proof that Defendants' legitimate non-discriminatory reason is pretextual and that she was a victim of intentional discrimination. *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954 (4th Cir. 1996). As detailed above in Section I, Plaintiff was discharged two months before the position of Senior Software Engineer was filled. Because Plaintiff was not employed with the County when the position was filled, she was not a qualified candidate. Plaintiff faces an insurmountable burden to show that the refusal to hire her into the Senior Software Engineer position was somehow tainted by racial bias when she was not even employed by the County when the position was filled.

## III. THE COUNTY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S § 1981/1983 CLAIMS.

Plaintiff's claim against the Individual Defendants in their official capacities is actually a claim against Guilford County, and must be analyzed as such. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (A claim against an individual in his official capacity is "treated as a [law]suit against the entity.")

20

42 U.S.C. § 1983 is the "exclusive remedy" for a violation of a rights under § 1981, against a state or local government entity. *Jett*, 491 U.S. at 735–36. Therefore, §1981 claims against Guilford County must be pursued under § 1983, and the Court will treat them as a single claim. *Dennis v. Cty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995).

To establish liability under § 1983, Plaintiff must prove (i) that the defendants "acted under color of state law," and (ii) that the plaintiff suffered a "deprivation of a constitutional right" as a result of that action. *Jett*, 491 U.S. at 723. To prove action was taken "under color of state law," Plaintiff must show an official "policy or custom" of discrimination, "fairly attributable" to Guilford County that "proximately caused" the deprivation of her rights. *Jordan by Jordan v. Jackson*, 15 F.3d 333, 337-38 (4th Cir. 1994). Plaintiff cannot meet this heavy burden.

Plaintiff cannot show that Guilford County had an official policy or custom of race based decision-making or terminating employees based on race under the guise of policy violations. To the contrary, Guilford County has a clear nondiscrimination policy, that not only prohibits discrimination in the workplace but provides a means for employees to file complaints of discriminatory behavior. (Ex. T; Ex. U.) The evidence before this Court demonstrates, assuming *arguendo* that Plaintiff's rights were violated, they were not violated as a result of an official policy or practice of the County.

IV. **THE INDIVIDUAL DEFENDANTS IN THEIR PERSONAL CAPACITY ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S § 1981 CLAIM.**

21

Qualified immunity shields "government officials performing discretionary functions" from personal liability as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. It is an analysis of whether (i) Defendants' conduct fell within the scope of their duties; (ii) the facts alleged establish a violation of a right and (iii) the right was clearly established at the time. *Brattain v. Stanly Cty. Bd. of Educ.*, No. 1:19CV1037, 2020 WL 6364718, at *6 (M.D.N.C. Oct. 29, 2020). A right is clearly established if a "reasonable official would understand that what he is doing violates that right." *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004). The reasonableness of an official's conduct is an objective inquiry, based on the specific circumstances. *Harlow*, 457 U.S. at 818.

The facts plainly show why each Individual Defendant is entitled to qualified immunity. First, they each operated within the scope of their duties and responsibilities. As managers in the IS Department, Mr. Solomon and Mr. Desai had the duty to investigate instances of misconduct and recommend disciplinary action justified by the facts known to them. (Solomon Aff. ¶ 3; Desai Aff. ¶ 5.) As the County Manager, Mr. Lawing had the duty and responsibility to consider and make a decision on Plaintiff's appeal of her termination. (Lawing Aff. ¶ 4.)

Second, Mr. Solomon and Mr. Desai each followed the County's procedural protocols for administering discipline, and each step in the suspension and termination

process was reviewed and approved in advance by Mr. Willis (African American), the County's Human Resources Manager. (Ex. R.)

Mr. Lawing followed County procedural protocols by having Plaintiff's appeal investigated by the Deputy County Manager, Clarence Grier. (Ex. R.) Based on the written recommendation of the Deputy County Manager, Mr. Lawing denied Plaintiff's appeal.

In summary, this lawsuit involves a routine employee disciplinary matter. The Individual Defendants are presumptively entitled to qualified immunity because the objective facts demonstrate that they each acted reasonably, in good faith, and within the scope of their duties and responsibilities.

To overcome qualified immunity, Plaintiff must present specific evidence that an Individual Defendant acted on the basis of racial bias. *Eberhart v. Gettys*, 215 F. Supp. 2d 666, 679 (M.D.N.C. 2002) (noting that the plaintiff's proof must support that the individual himself violated the plaintiff's rights and evidence of racially derogatory statements was sufficient). The undisputed facts show why Plaintiff cannot make a viable claim that any Individual Defendant acted with intentional racial bias.

Plaintiff has never met, talked with, or had any interaction with Mr. Lawing and she has no first-hand knowledge of any allegedly discriminatory act by Mr. Lawing. (Pouncey Dep. p. 29.) Given Plaintiff's deposition admissions, there is literally no factual basis to suggest that Mr. Lawing's limited role in denying Plaintiff's appeal is due to deliberate racial bias.

23

Mr. Desai's one-time statement, made one or two years prior to her termination, that she was "unprepared" for a business call is not evidence of racial bias. This isolated comment is a self-justifying legitimate critique of Plaintiff's job performance at one particular point in time. There is no link between this comment and Plaintiff's termination for misconduct.

Finally, Plaintiff's opinion about alleged racial bias by Mr. Solomon is rebutted by undisputed evidence. The undisputed evidence shows that Plaintiff did not receive less training than her White co-workers. (Ex. V.) Plus, her opinion that her annual job performance rating should have been higher than they were is not probative evidence of racial bias, since her self-assessment and opinion of her job performance is legally irrelevant. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.")

## V. THE POST-TERMINATION DISCOVERY OF MISCONDUCT BARS EQUITABLE RELIEF.

Under the after-acquired evidence doctrine, sufficient evidence of employee misconduct will cutoff back pay liability and bar the equitable remedies of reinstatement and front pay. *See McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995); *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1238–41 (4th Cir. 1995) (back pay is limited to the period from the date of the alleged unlawful discharge through the date the after-acquired evidence was discovered.) It is the employer's burden to prove it would have discharged the plaintiff if the misconduct had been known. *McKennon*, 513 U.S. at 362–63.

24

After Plaintiff's termination, Defendants discovered Plaintiff had full access to the email accounts of several directors and high level officials within the County, including the Guilford County Sheriff, County Manager, Mr. Lawing, County Attorney, and members of the County Commission. (D.E. 25; Ex. J.) Plaintiff's access to these accounts was unauthorized and amounted to a high level breach, resulting in an investigation by the County Sheriff's office for possible criminal charges. (Desai Aff. ¶¶ 46, 48.) The investigation revealed that Plaintiff, alongside another employee, had unfettered access to the email accounts and installed unauthorized software on her County computer, in violation of County protocols and policies. (*Id*.) Another County employee was terminated for similar unauthorized access to the email accounts of County employees, and Plaintiff would have been terminated if the County had known of this additional breach of ethical standards by Plaintiff. (Solomon Aff. ¶ 15, fn.1; Desai Aff. ¶ 47.) In summary, Defendants are entitled to partial summary judgment based on its Fourteenth Affirmative Defense, and Plaintiff should be barred from the equitable remedies of reinstatement and front pay, and any back pay should be limited to the time between October 18, 2017 and December 19, 2017 when evidence of this additional misconduct was discovered.

## CONCLUSION

For the reasons stated and the authorities cited therein, Defendants respectfully requests that this Motion for Summary Judgment be granted in its entirety and for any other such relief which may be just and proper.

Respectfully submitted, this the 23rd day of December, 2020.

**WOMBLE BOND DICKINSON (US) LLP**

By:    /s/ James M. Powell
          James M. Powell
          N.C. State Bar No. 12521
          300 N. Greene Street, Suite 1900
          Greensboro, NC 27401
          Telephone: (336) 574-8081
          Facsimile: (336) 574-4561
          Email: Jimmy.Powell@wbd-us.com

          *Attorney for Defendants Marty Lawing,*
          *Hemant Desai, and Jeffrey Solomon*

**GUILFORD COUNTY ATTORNEY'S OFFICE**

By:    /s/ Taniya D. Reaves
          Taniya D. Reaves
          N.C. State Bar No. 51791
          301 W. Market Street, Suite 301 (27401)
          Post Office Box 3427
          Greensboro, NC 27402
          Telephone: (336) 641-3852
          Facsimile: (336) 641-3642
          Email: treaves@guilfordcountync.gov

          /s/ J. Mark Payne
          J. Mark Payne
          N.C. State Bar No. 11046
          301 W. Market Street, Suite 301 (27401)
          Post Office Box 3427
          Greensboro, NC 27402
          Telephone: (336) 641-3852
          Facsimile: (336) 641-3642
          Email: mpayne@guilfordcountync.gov

          *Attorneys for Defendant Guilford County*

26

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** complies with Local Rule 7.3 in that the foregoing brief is fewer than 6,250 words relying on the word count feature of the word processing software.

By: <u>/s/ James M. Powell</u>
James M. Powell
N.C. State Bar No. 12521

Case 1:18-cv-01022-WO-LPA   Document 31   Filed 12/23/20   Page 27 of 28

## CERTIFICATE OF SERVICE

I hereby certify that on this day, the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Wilson F. Fong
> Hensel Law, PLLC
> PO Box 39270
> Greensboro, NC 27438
> Telephone: (336) 218-6646
> Facsimile: (336) 218-6467
> will.fong@hensellaw.com
>
> *Attorney for Plaintiff*

This the 23rd day of December, 2020.

**WOMBLE BOND DICKINSON (US) LLP**

By:     /s/James M. Powell
James M. Powell
N.C. State Bar No. 12521
300 N. Greene Street, Suite 1900
Greensboro, NC 27401
Telephone: (336) 574-8081
Facsimile: (336) 574-4561
Email: Jimmy.Powell@wbd-us.com

WBD (US) 50914248v7